[Cite as *State v. Fairfield*, 2012-Ohio-5060.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97466**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MATTHEW FAIRFIELD

DEFENDANT-APPELLANT

**JUDGMENT:
AFFIRMED IN PART;
REVERSED IN PART AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543012

**BEFORE:** Blackmon, A.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** November 1, 2012

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road
Suite 300
Westlake, Ohio 44145


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Daniel M. Kasaris
Mark J. Mahoney
Assistant County Prosecutors
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, A.J.:

**{¶1}** Appellant Matthew Fairfield ("Fairfield") appeals his convictions for unlawful possession of a dangerous ordnance, possession of criminal tools, failure to secure a dangerous ordnance, and receiving stolen property, and assigns the following errors for our review:

> **I. The trial court erred in overruling appellant's motion to suppress evidence.**
>
> **II. The trial court erred in sentencing appellant to sixteen consecutive sentences.**
>
> **III. The [trial] court erred in failing to merge allied offenses for purposes of sentencing.**

**{¶2}** Having reviewed the record and pertinent law, we affirm the trial court's denial of Fairfield's motion to suppress and reverse as to the trial court's failure to merge allied offenses, and remand for further proceedings. The apposite facts follow.

## Facts

**{¶3}** The Cuyahoga County Grand Jury indicted Fairfield on 97 counts. The charges included 18 counts of unlawful possession of dangerous ordnance, 23 counts of receiving stolen property, 23 counts of possession of criminal tools, 10 counts of failure to secure dangerous ordnance, one count of perjury, and 21 counts of pandering obscenity involving child pornography. The pandering obscenity and perjury counts were severed from the other counts.

{¶4}   Fairfield filed a motion to suppress regarding searches that occurred at two residences: one on Pawnee Road in Cleveland, Ohio, and one on Louis[1] Drive in North Olmsted, Ohio.   At the suppression hearing, the evidence showed that in the fall of 2009, Fairfield's wife[2] was being investigated by the Bureau of Criminal Investigation ("BCI") of the Ohio Attorney General's office regarding her part in a mortgage fraud scheme. She provided information regarding the mortgage fraud to Agent Arvin E. Clar of the BCI.  The information was later determined to be reliable and resulted in the arrest of several individuals.    The wife entered a guilty plea in the federal court for her participation in the fraud.

{¶5}   The BCI interviewed her again in the spring of 2010.   At that time, she and Fairfield were separated, and Fairfield was living in the marital home located on Louis Drive.   She told the agents that her husband had explosives and weapons at the marital home and also at a home on Pawnee Road owned by  Martin Engeland.   According to the CRI-wife, Engeland lived at the home with Tim Mayhugh.[3]    Fairfield allegedly stole the items from the U.S. government while he was in the army working with the Combat Engineers Unit.   The CRI-wife also told the officers that Fairfield was convicted in 2009

---

[1]The address has also been spelled as "Lewis" Drive throughout the record. We will use the spelling "Louis" as it was spelled in the search warrant.

[2]Throughout the opinion Fairfield's wife will be referred to as "CRI-wife" to denote that she was the confidential informant.

[3]The name has also been spelled as "Mayhew."   However, we will use the spelling "Mayhugh" as it was spelled in the search warrant.

for carrying a concealed weapon  and, as a result, he moved the explosives and weapons to the Pawnee Road address.

**{¶6}**  Based on the evidence provided by the CRI-wife, the agents conducted surveillance at the Pawnee address and verified that Engeland and Mayhugh lived at the home.  They also verified that Fairfield had prior military training with explosives, lived at the Louis Drive address in North Olmsted, and had a prior carrying a concealed weapon conviction.  After independently verifying this information, Agent Clar obtained a search warrant for the Pawnee Road address.

**{¶7}**  When the agents executed the warrant at the Pawnee Road address, Engeland was present along with Mayhugh. The agents recovered the following explosive devices: detonation cords, blasting caps, igniters, booby trap devices, and an actuator.[4] While at the Pawnee address, Mayhugh informed the agents that additional explosive devices were located at the Louis Drive home.  He told the agents that he had seen Fairfield use napalm and that Fairfield told him he had made it.

**{¶8}**  After concluding the search at the Pawnee address, Agent Clar obtained a search warrant to search the Louis Drive address.  Upon executing the warrant, the agents recovered napalm, two explosive devices called shock tubes, one with a blasting cap attached, and ammunition.

**{¶9}**  Based on the evidence presented, the trial court denied Fairfield's motion to suppress.  Thereafter, Fairfield entered a plea of no contest to numerous counts of

---

[4]Assault rifles were also retrieved from the premises, but the charges related to the guns were later dismissed because it was not illegal for Fairfield to possess them.

unlawful possession of a dangerous ordnance, possession of criminal tools, receiving stolen property, and failure to secure a dangerous ordnance. The court merged some of the counts after concluding they were allied offenses. The trial court sentenced Fairfield to a total aggregate sentence of 16 years in prison.

## Motion to Suppress

{¶10} In his first assigned error, Fairfield argues the trial court erred by denying his motion to suppress. Specifically, he argues that the search warrants were based on false and misleading information, his CRI-wife was not a credible informant, and she was prevented by spousal privilege from giving information to the police.

{¶11} Fairfield does not have standing to contest the search at the Pawnee address where most of the explosive devices were recovered. He did not reside at or own the house; therefore, he had no right to privacy regarding the items stored there. *State v. Dennis*, 79 Ohio St.3d 421, 1997-Ohio-372, 683 N.E.2d 1096. At oral argument, Fairfield's counsel for the first time argued that the trunk that contained the illegal items at the Pawnee address was locked; however, there was no evidence at the suppression hearing that the items were retrieved from a "locked" trunk.

{¶12} Fairfield lived at the Louis Drive address; therefore, he has standing to contest that search. The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures and provides that no warrants shall issue but upon probable cause. In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, the duty of the reviewing court is to determine whether the issuing judge had a substantial

basis to conclude that probable cause existed. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus, following *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Neither a trial court nor an appellate court should substitute its judgment for that of the issuing magistrate by conducting a de novo review. *Id.*

{¶13} In making the determination of whether there was a substantial basis to conclude that probable cause existed, the reviewing court must make a practical, common-sense decision whether given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at paragraph one of the syllabus. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts should afford great deference to the issuing magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *Id.*

{¶14} The affidavit attached to the search warrant for the Louis Drive address presented sufficient evidence to support probable cause that explosives would be found at the house. Agent Arvin Clar averred in the affidavit that a CRI provided information that Fairfield had stockpiled an arsenal including handguns, rifles, military rifles, and military explosives at the home. The Agent verified that Fairfield lived at the home, had military training with explosives, and had been receiving treatment for Post Traumatic

Stress Disorder for the past three years. Similar items were also recovered from the prior search at the Pawnee address.

{¶15} At all times in the affidavit, any reference to the CRI is to Fairfield's wife.[5] Fairfield contends that his CRI-wife could not provide information in support of the warrant because it violated the spousal privilege in violation of R.C. 2945.42, concerning the competency of a witness, and R.C. 2317.02, regarding privileged communications. Both statutes state that a husband and CRI-wife "shall not testify" concerning communications made to each other or regarding an act done in the presence of the other, during coverture, unless the communication or act was done in the known presence of a third person.

{¶16} The court in *State v. Jaschik*, 85 Ohio App.3d 589, 620 N.E.2d 883 (11th Dist.1993), addressed an identical situation. In *Jaschik*, the CRI-wife told police that her husband abused drugs and had weapons at the home. Based on the information she provided, the police obtained a search warrant for the marital home where weapons were found. The court in *Jaschik* concluded that the prohibition against "testifying" against a spouse applied to trials and not search warrants because warrants are used to aid in the investigation process and are ancillary to the criminal proceedings. We agree. Although the CRI-wife would not be permitted to testify at trial, she could provide information in support of the investigation.

{¶17} Fairfield also argues that the trial judge who signed the affidavit could not have determined whether Fairfield's wife was credible because the affidavit does not show their relationship and that they were separated. He also argues that although the affidavit indicates that the CRI-wife gave information that was helpful in the mortgage

---

[5]At the suppression hearing, Agent Clar testified that Mayhugh also provided information at the Pawnee search that explosives and napalm could be found at the Louis Drive address. However, the affidavit in support of the Louis Drive search does not refer to Mayhugh.

fraud case, it fails to state that the CRI-wife had engaged in mortgage fraud for which she was convicted in federal court. We held in *State v. Pustelnik*, 8th Dist. No. 91779, 2009-Ohio-3458:

> **Further, with regard to confidential or anonymous informants, their veracity, reliability and basis of knowledge are all highly relevant in determining probable cause, *Id*., * * * Nonetheless, a deficiency in one of these principles does not negate probable cause if there is a strong showing on another or if there is some other indicia of reliability. *Illinois v. Gates*, supra. Thus, an identified informant who provides corroborated information may establish probable cause. See *State v. Martin*, Cuyahoga App. No. 89030, 2007- Ohio-6062.**

{¶18} Agent Clar averred in his affidavit that he had worked with the CRI-wife for a year regarding the investigation of the mortgage fraud and that the CRI-wife had provided reliable information that was subsequently independently verified. Moreover, the agent also verified the information the CRI-wife gave to him regarding Fairfield by conducting a surveillance of the Pawnee Road and Louis Drive addresses. He was able to independently verify that Engeland and Mayhugh lived at the Pawnee address, that Fairfield had military training in dangerous ordnances, and that Fairfield resided at the Louis Drive address and had a carrying a concealed weapon conviction. The agent had also successfully executed a search warrant at the Pawnee Road address based on the CRI-wife's information, where weapons, detonation cords, and blasting caps were recovered.

{¶19} Because Agent Clar was able to verify that the CRI-wife was a reliable informant in the mortgage case and was able to verify information the CRI-wife gave him regarding Fairfield personally and by the successful Pawnee Road search, we conclude the CRI-wife's credibility and reliability was sufficiently established. The fact that she

was Fairfield's wife and pled guilty to a crime related to mortgage fraud, does not diminish her credibility in light of the fact that she had provided credible, reliable information in the mortgage fraud case and in support of the Pawnee Road search warrant.

{¶20}   Fairfield also argues that the search warrant states as the basis for the search that Fairfield's possession of weapons would constitute having weapons while under disability.  Fairfield correctly contends that his prior conviction for carrying a concealed weapon, which is not a crime of violence, does not support a charge for having a weapon while under disability.  However, the error is harmless because the warrant also stated that possession of the listed items would result in charges for possession of a dangerous ordnance, which was true.  Under these circumstances, the trial court did not err by denying Fairfield's motion to suppress.  Accordingly, Fairfield's first assigned error is overruled.

## Allied Offenses

{¶21}   We will address Fairfield's third assigned error prior to his second assigned error because it is dispositive of the second assigned error.   In his third assigned error, Fairfield argues the trial court failed to merge offenses that related to the same item.

{¶22} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 43, the Ohio Supreme Court stated that the purpose of merging allied offenses as follows:

> **[It has been] consistently recognized that the purpose of R.C. 2941.25 is**
>
> **to prevent shotgun convictions, that is, multiple findings of guilt and**

**corresponding punishments heaped on a defendant for closely related offenses arising from the same occurrence.** *Geiger*, **45 Ohio St.2d at 242, 344 N.E.2d 133. This is a broad purpose and ought not to be watered down with artificial and academic equivocation regarding the similarities of the crimes. When "in substance and effect but one offense has been committed," the defendant may be convicted of only one offense.** *Botta*, **27 Ohio St.2d at 203, 271 N.E.2d 776.**

{¶23} With this purpose in mind, the *Johnson* court established a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25. In so doing, the supreme court expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, which required a "comparison of the statutory elements in the abstract" to determine whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. The *Johnson* court held that rather than compare the elements of the crimes in the abstract, courts must consider the defendant's conduct.

{¶24} Under *Johnson*, the first inquiry focuses on "whether it is possible to commit one offense and commit the other with the same conduct * * *." *Id*. at ¶ 48. It is not necessary that the commission of one offense will always result in the commission of the other. *Id*. Rather, the question is whether it is possible for both offenses to be committed by the same conduct. *Id*. Conversely, if the commission of one offense will never result in the commission of the other, the offenses will not merge. *Id*. at ¶ 51.

**{¶25}** Here, the 75 counts Fairfield was charged with concerned the possession of two shock tubes, two spools of detonation cord, four wrapped blasting caps, four unwrapped blasting caps, eight booby traps, five igniters, an actuator, and a jar of napalm.

**{¶26}** In the case of the shock tubes, detonation cords, blasting caps, and actuator, Fairfield was charged for each item for unlawful possession of a dangerous ordnance, possession of criminal tools, and receiving stolen property. The court did merge the category of offenses for the items that were the same. For instance, the court merged all of the counts for possession of a dangerous ordnance regarding the four detonation cords. However, the court then also sentenced Fairfield for possession of criminal tools and receiving stolen property regarding the same cords. Prior to the *Johnson* case, the offenses of possession of criminal tools, receiving stolen property, and possession of a dangerous ordnance would not merge, because the statutory elements of each requires a different element. However, that is no longer our focus in determining the merging of allied offenses. Our focus is now whether it is possible for the offenses to be committed by the same conduct. Fairfield's receiving the stolen property in the instant case, also results in him also unlawfully possessing a dangerous ordnance and possessing a criminal tool.

**{¶27}** If the multiple offenses can be committed with the same conduct, the court must then determine whether the offenses were in fact committed by a single act, or performed with a single state of mind. *Johnson* at ¶ 49. If the answer to both questions is yes, the offenses are allied offenses of similar import and must be merged. *Id.* at ¶ 50.

On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. *Id.* at ¶ 51.

**{¶28}** Under R.C. 2941.25(B), "animus" is defined as "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for the offenses. *State v. Lewis*, 12th Dist. No. CA2008-10-045, 2012-Ohio-885, ¶ 13. Here, there is no indication that Fairfield was acquiring the materials for separate purposes, or had a separate intent or motive in having the materials. Therefore, the offenses were all committed with the same animus.

**{¶29}** Having answered both prongs of *Johnson* in the affirmative, we find that under the facts of this case, possession of a dangerous ordnance, possession of criminal tools, and receiving stolen property are allied offenses of similar import that must be merged. Accordingly, we reverse and vacate Fairfield's sentence as to those charges and remand for a new sentencing hearing on the offense that remains after the state selects which allied offense to pursue. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 13-15. On remand, the state will have the right to elect, and the trial court will be bound by, the state's election. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraphs one, two, and three of the syllabus. Accordingly, Fairfield's third assigned error is sustained.

**{¶30}** Fairfield's second assigned error challenges the trial court's imposition of consecutive sentences. Our disposition of his third assigned error renders this assigned error moot. We, therefore, need not address it. App.R. 12(A)(1)(c).

**{¶31}** Judgment affirmed in part; reversed in part and remanded for a re-sentencing hearing.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____

PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., and
MARY J. BOYLE, J., CONCUR