OPINION
{¶ 1} Defendant-appellant Sean Beam appeals the February 15, 2006 Order of the Court entered by the Delaware County Court of Common Pleas, which ordered him to pay restitution in the amount of $329,438.32 . Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On October 15, 2004, the Delaware County Grand Jury indicted appellant on one count of engaging in a pattern of corrupt activities, in violation of R.C. 2923.32; eight counts of theft, in violation of R.C. 2913.02; and three counts of falsification, in violation of R.C.2921.13(A)(9). The trial court scheduled the matter for trial on May 16, 2005. On the day of trial, the parties notified the trial court they had entered into plea negotiations pursuant to Crim. R. 11(F). Pursuant to the plea agreement, appellant entered a written guilty plea as contemplated by North Carolina v. Alford (1970), 400 U.S. 25, to the prosecutor's Bill of Information, charging one count of unauthorized use of property, in violation of R.C. 2913.04(A), a fourth degree felony. The State dismissed the Indictment and closed all pending investigative files involving appellant and his business. After finding appellant was voluntarily, knowingly, and understandingly entering his Alford plea of guilty, the trial court accepted the plea and found appellant guilty of unauthorized use of property. The trial court referred the matter for a presentence investigation and report.
 {¶ 3} Prior to sentencing, the State filed a Motion for Restitution. The State requested restitution as follows: $16,960.84 to Jason and Julie Abrams; $88,484.00 to James and Amy Sweeney; and $223,993.48 to Charles and Wendy Lane. Appellant contested the amount of restitution sought, and requested a hearing on the matter. The trial court scheduled the restitution hearing and sentencing hearing for October 18, 2005. The State and appellant agreed to brief the issue of restitution in lieu of a hearing. The trial court sentenced appellant to five years of community control.
 {¶ 4} The factual background giving rise to the criminal action against appellant is as follows. Appellant founded HomeCrafters of Ohio, LTD. in the fall of 1998. Within one year, John Vouis joined appellant as his business partner. During its existence, the company successfully completed twenty-five homes in central Ohio as well as several commercial jobs and one historic renovation. The company did not advertise, but obtained new clients solely from the referrals of past clients.
 {¶ 5} In September, 2001, John Vouis, who handled sales and client relationships, died unexpectedly of an aneurism at the age of forty-three. Many projects were in place and in progress at this time. Appellant believed he could successfully continue with the business as he had the necessary staff.
 {¶ 6} On December 18, 2001, appellant contracted with Jason and Julie Abrams for the construction of a new home with a promised completion date of August 31, 2002. On May 28, 2002, appellant entered into a contract with Charles and Wendy Lane for the construction of a new home with a completion date of February 28, 2003. On June 19, 2002, appellant entered into a new home construction contract with James and Amy Sweeney with a promised completion date of January 31, 2003. Appellant submits, at the time he entered into these contracts, the company had adequate capital and capability of performance.
 {¶ 7} Between January 11, 2002, and January 16, 2003, appellant received approximately $151,627.77 in construction loan draws from the Abrams' construction loan account; $131,500.00 in draws from the Sweeney's construction loan account; and $190,215.45 from the Lane's construction loan account. Although the draws were based upon completed work on the homes, appellant did not use the monies to pay his subcontractors. The total nonpayment to subcontractors on the Abrams' home was approximately $56,618.80; on the Sweeney home, $54,464.62; and on the Lane home, $59,347.66. As a result, mechanic's liens were placed on all three homes.
 {¶ 8} Appellant left the State of Ohio in January, 2003, leaving the Abrams, Sweeneys, and Lanes with the business of contracting with subcontractors to complete the construction of their respective homes, which resulted in additional costs. Each couple filed civil lawsuits against appellant, and ultimately obtained judgments and damage awards against him.
 {¶ 9} Via Order of the Court filed February 15, 2006, the trial court found the State had met its burden of production and persuasion, and ordered appellant pay restitution in the amounts requested by the State.
 {¶ 10} It is from this order appellant appeals, raising the following assignments of error:
 {¶ 11} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ORDERING RESTITUTION IN AN AMOUNT INCLUDING ITEMS OF DAMAGES WHICH EXCEED THE AMOUNT OF ECONOMIC LOSS SUFFERED BY THE VICTIMS AS A RESULT OF DEFENDANT'S CRIMINALLY INJURIOUS CONDUCT.
 {¶ 12} "II. THE TRIAL COURT ERRED WITH PREJUDICIAL IMPACT AGAINST DEFENDANT BY FAILING TO DETERMINE THAT THE AMOUNT OF RESTITUTION ORDERED WAS REASONABLY RELATED TO THE ACTUAL DAMAGE OR LOSS SUFFERED BY THE VICTIM.
 {¶ 13} "III. THE TRIAL COURT ERRED WITH PREJUDICE AGAINST DEFENDANT BY FAILING TO DETERMINE DEFENDANT'S ABILITY TO PAY PRIOR TO ORDERING THE INTERIM RESTITUTION ORDER OF $2,000.00 PER MONTH UNDER R.C. 2919.19(B)(6)."
 I {¶ 14} In his first assignment of error, appellant maintains the trial court erred in ordering restitution in amounts which exceed the actual economic loss suffered by the victims as a result of appellant's criminal conduct.
 {¶ 15} A trial court is authorized to order restitution by an offender to a victim in an amount based upon the victim's economic loss. R.C.2929.18(A)(1). The trial court is to determine the amount of restitution at the sentencing hearing. Id. The amount of the restitution must be supported by competent, credible evidence from which the court can discern the amount of the restitution to a reasonable degree of certainty. State v. Gears (1999), 135 Ohio App.3d 297. A trial court abuses its discretion in ordering restitution in an amount that was not determined to bear a reasonable relationship to the actual loss suffered. State v. Williams (1986), 34 Ohio App.3d 33.
 {¶ 16} As set forth supra, the trial court ordered restitution as follows: Jason and Julie Abrams, $16,960.84; James and Amy Sweeney, $88,484; and Charles and Wendy Lane, $235,200. The order reflected the exact amount requested by the State. The order is silent as to the trial court's reasons. Appellant maintains the State failed to demonstrate the requested damages were clearly related to his criminal conduct. Appellant specifically asserts the trial court ordered restitution for amounts of money which were not out of pocket damages and had never been expended by the victims. These amounts include mortgage principal reductions, upgrades, and monies due to appellant under the original construction contracts with the victims.
 Restitution to Jason and Julie Abrams {¶ 17} The Abrams requested $16,960.84 in restitution from appellant. The figure is calculated as follows: $13,284.03 for attorney fees to remove the mechanic's liens filed by subcontractors not paid by appellant for work completed on Abrams' residence; $3,000 for rent as their new home had not been completed on the date set forth in the construction contract; and $676.81 for miscellaneous telephone charges for calls to appellant, subcontractors, and attorneys in an effort to complete construction of their home.
 {¶ 18} Appellant states the trial court failed to off set the requested amount by the reduction of the mortgage principal the Abrams received from their lending institution as a result of negotiations relative to the failure to complete the construction by the original deadline. Appellant explains the mortgage principal reduction effectively lowered the overall repayment price for the funds borrowed by the Abrams. The Abrams received a $7,500 reduction in their mortgage principal.
 {¶ 19} Next, appellant contends the trial court included payment for goods and services not included in the original home construction agreement in the calculation of the Abrams' restitution. Specifically, appellant submits the trial court included $22,250 for upgrades the Abrams made to their home under construction agreements made with substitute contractors. These extras include an additional furnace and air conditioning system; cabinets; windows and vinyl; and a finished room above the garage.
 {¶ 20} Finally, appellant argues the trial court failed to calculate as an offset the Abrams' nonpayment of the final construction loan draw in its calculation of restitution. Appellant explains at the time he requested release of the final draw, the Abrams' home was more than 95% complete. The Abrams failure to release the final draw resulted in their home not being completed in a timely manner.
 {¶ 21} Upon review of the entire record in this matter, we agree with appellant the trial court should have off set the amount of restitution appellant owed to Jason and Julie Abrams by the net principal reduction the Abrams obtained from their mortgage company. The Abrams received a $7,500 reduction in their loan balance. This reduction financially benefited the Abrams. If not for appellant's criminally injurious conduct, the Abrams would not have received this benefit. They should not be permitted a windfall. Therefore, we remand this matter to the trial court to reduce the amount of restitution it ordered appellant to pay by the mortgage principal reduction less the costs and fees directly associated with the Abrams' negotiation with their mortgage company to obtain the reduction. With respect to the upgrades, the Abrams did not request restitution for those expenses. The Abrams requested restitution for attorney fees to remove the mechanics liens, rent, and cell phone charges. We find these charges properly fall within the definition of "economic loss".
 {¶ 22} Appellant's assignment of error with respect to the Abrams is sustained in part and overruled in part.
 Restitution to Charles and Wendy Lane {¶ 23} Charles and Wendy Lane requested $223,993.48 in restitution from appellant. This figure includes $62,642.69 to complete the construction of their home; $113,000 in legal fees to litigate their civil suit against appellant and to remove the mechanic's liens filed on the property; $48,350.79 in rent and mortgage payments on a second home, and the loss on the sale of the second home.
 {¶ 24} Appellant asserts the trial court failed to take into consideration the $36,845 by which the Lane's mortgage principal was reduced as well as numerous change orders the Lanes made in January, 2003, amounting of $19,000. According to appellant, the work was completed, but the Lanes never released the funds for payment of this work. For the reasons we sustained appellant's assignment of error with respect to the Abrams' mortgage principal reduction, we sustain this portion of the assignment of error.
 {¶ 25} Appellant notes the Lanes chose to purchase a second home while awaiting the completion of their new home. When their new home was completed, the Lanes sold the second home and accepted an offer which resulted in a claimed loss of $7,448.47. The Lanes sought this amount in restitution from appellant. Appellant maintains he should not be responsible for this amount. We agree. We find voluntarily incurred expenses are not compensable as restitution damages. For a similar result, see, In Re: Crooks (1989), 52 NE 2d 684. The trial court should not have included this amount in the restitution order.
 {¶ 26} Appellant also challenges the amount of attorney fees requested by the Lanes. The Lanes requested $113,000, representing the fees to remove the mechanic's liens from their home as well as the fees incurred in pursuing their civil litigation against appellant. Appellant concedes he is responsible for the attorney fees to remove the mechanic's liens, however, he submits requiring him to pay the attorney fees incurred in pursuing the civil litigation was improper. We agree. In State v.Morris (2001), 143 Ohio App. 3d 817, the Tenth District Court of Appeals found R.C. 2929.11(E) does not permit a trial court to impose restitution in an amount greater than the value of the property that was stolen. The trial court herein was not permitted to award attorney fees beyond the fees incurred in removing the mechanic's lien. Assuming, arguendo, the Lane's attorney fees to remove the mechanic's lien did amount to $113,000, we find such fees to be unreasonable, particularly in light of the amount of attorney fees requested by the other victims and the fact the amount of fees requested almost double the amount of the original mechanic's lien.[1]
 {¶ 27} For the reasons discussed, we sustain appellant's assignment of error with respect to the Lane's restitution.
 Restitution to James and Amy Sweeney {¶ 28} James and Amy Sweeney requested $88,484 in restitution from appellant, which includes $12,630.64 for attorney fees to remove the mechanic's liens; $9,750 for rent; $63,215.41 as the cost of completing the home over the original contract price; and $2,888,40 as money advanced to appellant for an extra which was neither installed nor completed by appellant.
 {¶ 29} Appellant submits the Sweeneys received mortgage principal reductions in the amount of $30,000, and, as such, the restitution order should be reduced by the monies the couple received as a setoff from their mortgage company. Like the Abrams and the Lanes, the Sweeneys should not be permitted a windfall due to appellant's conduct. We remand this portion of the restitution order.
 {¶ 30} Appellant does not contest the amount of attorney fees incurred by the Sweeneys in setting aside the mechanic's liens on their home. Likewise, appellant does not contest the amount of rent incurred by the Sweeneys as a result of the delay in completing their home.
 {¶ 31} Appellant does, however, challenge the trial court's ordering him to pay restitution for upgrades from the original contract. Appellant states the Sweeneys spent an additional $45,068.23 on upgrades which were not included in the original home construction contract. Upon review of the record, it appears the substitute home construction agreement for the completion of the Sweeney home included items and work not contemplated in the original agreement between the Sweeneys and appellant. Accordingly, we remand this portion of the restitution order to the trial court for redetermination.
 {¶ 32} Appellant's first assignment of error is overruled in part, and sustained in part.
 II {¶ 33} In his second assignment of error, appellant asserts the trial court erred in failing to determine the amount of restitution ordered was reasonably related to the actual damages or loss suffered by the victims.
 {¶ 34} For the reasons set forth in assignment of error one, we overrule this assignment of error in part, and sustain it in part.
 III {¶ 35} In his final assignment of error, appellant asserts the trial court erred in failing to determine his ability to pay prior to ordering the interim restitution order of $2000/month.
 {¶ 36} R.C. 2929.18(A)(1) provides a court imposing a sentence upon an offender for a felony may impose a financial sanction, including restitution. Subsection (E) states the court which imposes a financial sanction upon an offender may hold a hearing if necessary to determine whether he is able to pay the sanction, or is likely in the future to be able to pay it. This Court has previously held the statute does not include mandatory language which requires the trial court to hold a hearing. State v. Schnuck (September 25, 2000), Tusc. App. No. 2000AP020016. A trial court is only required to consider appellant's present and future ability to pay prior to ordering restitution. Appellant did not request a hearing on his ability to pay nor did he provide the trial court with an affidavit of indigency or other at the time of the sentencing hearing to indicate to the court he may be unable to pay.
 {¶ 37} Despite appellant's failure to request a hearing on his ability to pay, the trial court conducted an extensive inquiry into his present and future ability to pay restitution at the October 18, 2005 sentencing hearing. On the record, the trial court specifically stated, "It is clear from the information now available to the court that Mr. Beam does in fact have the ability to pay restitution though perhaps not, certainly not, in a single lump sum." October 18, 2005 Sentencing Hearing at 29-30.
 {¶ 38} Appellant's third assignment of error is overruled.
 {¶ 39} The judgment of the Delaware County Court of Common Pleas is affirmed in part, and reversed and remanded in part.
Hoffman, P.J., Boggins, J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed in part, and reversed and remanded in part. Costs assessed equally.
[1] We do not conclusively know whether the $113,000 attorney fee included payoff of the mechanic's lien.