[Cite as *State v. Love*, 2014-Ohio-437.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY


STATE OF OHIO,

     PLAINTIFF-APPELLEE,               CASE NO. 9-13-09

     v.

CRAIG ANTHONY LOVE,             O P I N I O N

     DEFENDANT-APPELLANT.


Appeal from Marion County Common Pleas Court
Trial Court No. 12-CR-014

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision: February 10, 2014


APPEARANCES:

    *Terrence K. Scott* for Appellant

    *Brent W. Yager* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant Craig Love ("Love") appeals the February 19, 2013, judgment entry of the Marion County Common Pleas Court sentencing Love to an aggregate prison term of fourteen years following Love's guilty pleas to Breaking and Entering in violation of R.C. 2911.13(A), a felony of the fifth degree, Aggravated Arson in violation of R.C. 2909.02(A)(1), a felony of the first degree, Vandalism in violation of R.C. 2909.05(B)(1)(a), a felony of the third degree, Vandalism in violation of R.C. 2909.05(B)(1)(a), a felony of the fourth degree, and four counts of Arson in violation of R.C. 2909.03(A)(1), all felonies of the fourth degree.

{¶2} The facts relevant to this appeal are as follows. In the early morning hours of December 29, 2011, Love, along with a juvenile friend, broke into Servex Electronics ("Servex"). Servex was one of nine business properties under the same roof in Marion, Ohio, with seven of the business properties occupied by businesses at the time. After breaking into Servex, Love and his friend stole televisions and various other electronics valued at more than $7,500 and then carried them out of the building. Subsequently, Love and the juvenile returned to Servex and set fire to the building. The building was "engulfed in flames" and all of the business units were harmed in the fire. (June 4, 2012, Plea Hrg. Tr. at 16); (Doc. 22).

{¶3} On January 5, 2012, Love was indicted in a 23 count indictment. (Doc. 1). Count 1 charged Love with Breaking and Entering in violation of R.C. 2911.13(A), a felony of the fifth degree. (*Id*.) Count 2 charged Love with Theft in violation of R.C. 2913.02(A)(1), a felony of the fourth degree. (*Id*.) Count 3 charged Love with Aggravated Arson, in violation of R.C. 2909.02(A)(1), a felony of the first degree. (*Id*.) Counts 4 through 12 charged Love with Vandalism in violation of R.C. 2909.05(B)(1)(a), all felonies of the fourth degree. (*Id*.) Counts 13 through 21 charged Love with Arson in violation of R.C. 2909.03(A)(1), all felonies of the fourth degree. (*Id*.) Counts 22 and 23 charged Love with Tampering with Evidence in violation of R.C. 2921.12(A)(1), both felonies of the third degree. (*Id*.) The indictment did not specify which counts corresponded to which victims.

{¶4} On January 9, 2012, Love was arraigned and pled not guilty to the charges. (Doc. 3).

{¶5} On January 11, 2012, Love filed a request for a Bill of Particulars. (Doc. 6). On May 18, 2012, after Love had filed a motion to compel, the State filed a Bill of Particulars, specifying which businesses were the victims of the corresponding indicted offenses. (Doc. 22). The Bill of Particulars listed Servex as the victim for Counts 1, 4, and 13. (*Id*.) It listed Craig Miller Insurance as the victim for Counts 5 and 14. (*Id*.) It listed a "temporarily vacant unit" as the

victim for Count 15 (and thus C&J Realty as the owner), and it listed the Hong Kong Buffet as the victim for Count 16. (*Id.*) Count 3, Aggravated Arson, described the victims as a nearby bakery owner who had already started baking for the day, people in Crescent Heights apartments, and anyone in a nearby Wendy's restaurant.[1] (*Id.*)

**{¶6}** On June 4, 2012, the parties drafted a written negotiated guilty plea in which Love agreed to plead guilty to seven counts in the indictment, and the State agreed to dismiss the remaining counts. (Doc. 29). Specifically, Love agreed to plead guilty to Count 1, Breaking and Entering, Count 3, Aggravated Arson, Count 4, Vandalism (amended to a felony of the third degree), Count 5, Vandalism, and Counts 13-16, all Arson offenses. (Doc. 29). This written plea agreement did not list any victims. The written plea agreement was signed by Love, his attorney, the prosecutor, and the Judge. (*Id.*)

**{¶7}** Subsequently, on the same day, the court held a change-of-plea hearing. At that plea hearing, the prosecutor stated that it was his understanding that Love would plead guilty to the counts as specified in the plea agreement.[2] (June 4, 2012, Tr. at 1-2). The prosecutor then recommended a 15 year prison sentence, but noted that there was no agreement as far as sentencing with Love.

---

[1] We only point to these counts specifically as they are the numbered counts to which Love plead guilty.
[2] In so doing, the prosecutor also moved to amend Count 4 of the indictment, making the Vandalism damage done over $7,500, but less than $150,000, and thus a felony of the third degree rather than a felony of the fourth degree. (June 4, 2012, Tr. at 1).

(*Id.* at 2). Defense counsel then stated briefly that she believed all but two of the counts against Love merged, and that she would argue merger at the sentencing hearing. (*Id.* at 3-4).

{¶8} The trial court then conducted a Crim.R. 11 dialogue with Love, informing Love of the rights he was waving in agreeing to plead guilty, and making sure Love understood what the State would have to prove if Love went to trial. (*Id.* at 5-15). Following this dialogue, the court asked the prosecutor to briefly summarize the facts that would have been presented if the matter had gone to trial. (*Id.* at 15). After summarizing the facts, the Prosecutor then stated the following with regard to the victims of Counts 13-16:

> **As to Count 13 of the Arson, that would go to the Tobacco Warehouse, Your Honor.**
>
> **\* \* \***
>
> **As to Count 14 \* \* \* [t]his would be the GT Professional business[.]**
>
> **\* \* \***
>
> **Count 15 would go to Stumpo's Pizza[.]**
>
> **\* \* \***
>
> **And then finally as to Count 16, that would be Amer – the Advance America[.]**

(Tr. at 17-18). Notably, the victims the prosecutor mentions in this section do not correspond to the counts in the indictment as explained by the Bill of Particulars.

As no victims were listed in the indictment, the only way to understand the victims of the counts listed in the indictment is through the corresponding Bill of Particulars. The Bill of Particulars listed the Tobacco Warehouse as victim of Arson under Count 21, GT Professional Business as a victim of Arson under Count 19, Stumpo's Pizza as a victim of Arson under Count 18, and Advance America as a victim of Arson under Count 17.

{¶9} Following the prosecutor's statement regarding the facts and the victims of the counts, the court asked Love the following:

> **THE COURT: Mr. Love, having been advised of the charges against you and of your right to trial and after hearing the facts as stated by the Prosecutor, how do you plea to this charge of Breaking and Entering, a fifth degree felony, Count 1 of the indictment?**
>
> **THE DEFENDANT: I plead guilty.**

(*Id*. at 19). The court then proceeded to question Love as to how he plead to Counts 3, 4, 5, 13, 14, 15, and 16 "of the indictment." (*Id*. at 19-20). Love entered guilty pleas to those counts, and the court accepted those pleas as "knowingly, intelligently, and voluntarily entered." (*Id*. at 20).

{¶10} Before the conclusion of the change-of-plea hearing, defense counsel stated that Love disagreed with some of the facts that the prosecutor had stated. Love then made a statement, clarifying that he was "drinking and eating pills" on the night of the incident. (*Id*. at 21). Love further stated that he "set fire to the

building" after his friend gave him a lighter. (*Id.* at 22). Love made no further objection, comment, or clarification to the prosecutor's statement of facts at the plea hearing. Following Love's statement, the court concluded the hearing and the matter was set for a sentencing hearing.

{¶11} Prior to the sentencing hearing, Love's counsel filed a sentencing memorandum, contending that all of the offenses merged, as they were a result of one course of conduct. (Doc. 32). In addition, Love's counsel argued that the victims in this case were the victims listed in the Indictment as explained by the Bill of Particulars rather than the victims that the prosecutor stated on the record at the plea hearing before Love pled guilty. (*Id.*) Love's counsel contended that the plea agreement enumerated specific counts in the indictment that corresponded to specific victims, and that those victims should be used for the purposes of determining merger. (*Id.*)

{¶12} At the beginning of the sentencing hearing, the prosecutor addressed this matter, stating the following:

> **When we entered these plea negotiations, I made it clear to counsel that I wanted a count of either Vandalism or Arson for each one of the victims in this matter. The reason I bring this up, Your Honor, I notice in the Sentencing Memorandum that she prepared that she notes under her allied defenses [sic] argument that some are the same victims. But when I laid out the plea negotiation again I have a count for each victim. So just to clear the record, I would, pursuant to Criminal Rule 7, Ohio Rules of Criminal Procedure, move to amend the Bill of Particulars as to Count 13, it should be Tobacco Warehouse,**

> **Count 14 GT Professional, Count 15 Stumpo's Pizza, and Count 16 Advance America.  That would give us a victim for each one of these counts**.

(Aug. 13, 2012, Tr. at 1-2).

{¶13} The court then asked if Love's Counsel had any objection to the amendment of the Bill of Particulars, and Love's counsel did object, arguing,

> **First of all, Mr. Yager is a very seasoned Prosecutor and is aware that the Courts speak through their record.  Pursuant to the indictment, which never named a victim, I requested on more than one occasion a Bill of Particulars.  And finally got a response to that and the Bill of Particulars lays out – and is attached to my Memorandum – Sentencing Memorandum, each victim named in each count.**
>
> **Prosecutor chose the counts and pursuant to the plea agreement – laid out in the plea agreement – those are the counts that he chose and we agreed to.  So if you also look at the record during the proceeding of the change of plea, that also did not lay out any specific victim.  So it's too late in the day, I believe, to change the Bill of Particulars.  Here we are at sentencing and I would object to that.**

(*Id*. at 3).

{¶14} The prosecutor responded by stating:

> **Again, I sent out a Sentencing Plea Offer in this matter.  One handwritten which she did ask that I reduce it to typing because she couldn't read my handwriting.  On May the 24th, we sent that out.  Again listing as victims in each count which victim. And as I laid it out for the amendment to the Court is how we laid it out in the Plea offer.**
>
> **Also would sight [sic] Criminal Rule 7E which states, "Bill of Particulars may be amended at any time subject to such condition or if justice requires."**

(*Id*. at 3-4).

**{¶15}** The following dialogue then took place between the prosecutor, the

court, and Love's counsel:

> **MS SLOWEY [Love's Counsel]:** Again, the record, not emails, speak as to what happened in this case. And when I requested the Bill of Particulars on two occasions and requested that be a sanctions [sic] because I didn't receive it, that was a problem from the very beginning. And if it's not in the Bill of Particulars that's what is part of the record, the indictment, the change of plea paperwork, and the oral record that was in this case during the change of plea.
>
> Your Honor, I do object to that. It's late in the day. We're here for a sentencing hearing.
>
> **THE COURT:** Can counsel advise the Court, was there – Mr. Yager, you were making your statement of facts that would be proved in trial at the time of plea, did you mention the victims as your [sic] trying to amend now?
>
> **MR YAGER:** I believe I did, Your Honor. I – I'd have to listen to it.
>
> **MS. SLOWEY:** No, Your Honor. I specifically took notes. It was not mentioned. It was a very brief recitation of the facts and I put that into my Memorandum as well. No victims were laid out on the record.
>
> **THE COURT:** Alright, Motion to Amend is overruled.

(*Id*. at 4-5).

**{¶16}** With the prosecutor's motion to amend the Bill of Particulars having

been overruled, the sentencing hearing then proceeded. Love's Counsel argued

that the offenses should all merge, or in the alternative, at the very least, the offenses against the same victims should merge—using the victims listed in the Bill of Particulars as the appropriate guideline.

{¶17} Ultimately, the court sentenced Love to 12 months in prison on Count 1, Breaking and Entering, 7 years in prison for Count 3, Aggravated Arson, 24 months in prison for Count 4, Vandalism, 12 months in prison for Count 5, Vandalism, and 12 months in prison for Counts 14, 15, and 16. Count 13, Arson, was merged with Count 4. (*Id*. at 32). All sentences were to be served consecutive to each other for an aggregate prison sentence of 14 years. (*Id*.) At the conclusion of the sentencing hearing, the court determined that a separate hearing needed to be held regarding restitution to the victims. The trial court filed an entry reflecting the sentence on August 20, 2012. (Doc. 33).

{¶18} On December 3, 2012, the court held a restitution hearing. Multiple business owners came forward and gave testimony at the hearing regarding their losses as a result of the fire. The court took the matter under advisement.

{¶19} On January 23, 2012, the court filed an entry on restitution. (Doc. 46). On February 19, 2013, the trial court filed a final judgment entry of sentencing containing both Love's sentence and the order of restitution. (Doc. 47). The entry ordered Love to pay restitution to Servex in the amount of $122,666.61, to Craig Miller Insurance in the amount of $500, to GT Professional

Services in the amount of $1,845.61, to Stumpo's Pizza in the amount of $12,922.49, to Advance America in the amount of $500, and to the Tobacco Warehouse in the amount of $37,645.22. (*Id.*)

{¶20} It is from this judgment that Love appeals, asserting the following assignments of error for our review.

### ASSIGNMENT OF ERROR 1

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT IMPOSED SEPARATE SENTENCES UPON CRAIG LOVE FOR OFFENSES THAT AROSE FROM THE SAME CONDUCT, WERE NOT COMMITTED SEPARATELY OR WITH A SEPARATE ANIMUS, AND SHOULD HAVE BEEN MERGED FOR SENTENCING PURPOSES UNDER R.C. 2941.25.**

### ASSIGNMENT OF ERROR 2

**THE TRIAL COURT ERRED BY ORDERING THAT CRAIG LOVE PAY RESTITUTION FOR DAMAGES ATTRIBUTED TO OFFENSES FOR WHICH HE WAS CHARGED BUT NOT CONVICTED IN VIOLATION OF R.C. 2929.18(A)(1).**

### ASSIGNMENT OF ERROR 3

**THE TRIAL COURT ERRED BY IMPOSING RESTITUTION FOR LOSSES THAT WERE NOT A DIRECT [OR] PROXIMATE RESULT OF THE COMMISSION OF AN OFFENSE.**

### ASSIGNMENT OF ERROR 4

**THE TRIAL COURT ERRED BY ORDERING CRAIG LOVE TO PAY RESTITUTION WITHOUT CONSIDERING MR. LOVE'S ABILITY TO PAY AS REQUIRED BY R.C. 2929.19(B)(6)[.]**

**ASSIGNMENT OF ERROR 5**

**THE TRIAL COURT VIOLATED CRAIG LOVE'S RIGHT TO DUE PROCESS WHEN THE TRIAL COURT ORDERED RESTITUTION THAT WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE IN THE RECORD.**

{¶21} For the sake of clarity, we elect to address some of the assignments of error out of the order in which they were raised.

*First Assignment of Error*

{¶22} In his first assignment of error, Love contends that the trial court abused its discretion when it imposed separate sentences on Love for offenses that arose from the same conduct. Specifically, Love argues that the trial court should have merged the Aggravated Arson with the Vandalism/Arson against Servex, and the Arson against Craig Miller Insurance with the Vandalism against Craig Miller Insurance. Love also argues that the Arson against C&J Realty (the owner of the vacant rental units on the business property) and the Arson against the Hong Kong Buffet should merge, and finally, that the Aggravated Arson should merge with the Arson against the C&J Realty property.

{¶23} Whether offenses are allied offenses of similar import is a question of law that this Court reviews *de novo*. *State v. Stall,* 3d Dist. No. 3–10–12, 2011–Ohio–5733, ¶ 15, citing *State v. Brown,* 3d Dist. No. 1–10–31, 2011–Ohio–1461, ¶ 36. Revised Code 2941.25, Ohio's multiple-count statute, states:

**(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.**

**(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.**

{¶24} In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, the Supreme Court of Ohio modified the analysis for determining whether offenses are allied offenses of similar import under R.C. 2941.25. "In *Johnson* the Supreme Court revised the allied offenses analysis by removing the first step of the analysis, which had required trial courts to compare the elements of the charged offenses in the abstract." *State v. Helmbright*, 10th Dist. Nos. 11AP-1080, 11AP-1081, 2013-Ohio-1143, ¶ 33. Now, according to *Johnson*, a court must first determine whether it is possible to commit both offenses with the same conduct. *Johnson*, *supra*, at ¶ 48. "If the multiple offenses can be committed with the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008–Ohio–4569, ¶ 50 (Lanzinger, J., dissenting). If it is possible to commit the offenses with the same conduct and the defendant did, in fact, commit the multiple offenses with

-13-

the same conduct, then the offenses are allied offenses of similar import and will merge. *Id.* at ¶ 50.

**{¶25}** However, "if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶ 51. "The defendant bears the burden to prove entitlement to merger." *State v. Forney*, 2d Dist. No. 2012-CA-36, 2013-Ohio-3458, ¶ 10, citing *State v. Jackson,* 2d Dist. Montgomery No. 24430, 2012–Ohio–2335, ¶ 134.

**{¶26}** In this case, Love argues that his convictions for Aggravated Arson, Arson, and Vandalism that were perpetrated against the same victims or as part of the same course of conduct should have been merged for the purposes of sentencing. The statutes corresponding to the charges for which Love was convicted read as follows:

**{¶27}** Aggravated Arson, in violation of R.C. 2909.02(A)(1), reads

**(A)  No person, by means of fire or explosion, shall knowingly do any of the following:**

**(1)  Create a substantial risk of serious physical harm to any person other than the offender;**

**{¶28}** Arson, in violation of R.C. 2909.03(A)(1), reads

-14-

**(A)  No person, by means of fire or explosion, shall knowingly do any of the following:**

**(1)  Cause, or create a substantial risk of, physical harm to any property of another without the other person's consent**

**{¶29}** Vandalism, in violation of R.C. 2909.05(B)(1)(a), reads

**(B)(1) No person shall knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies:**

**(a)  The property is used by its owner or possessor in the owner's or possessor's profession, business, trade, or occupation, and the value of the property or the amount of physical harm involved is one thousand dollars or more;**

**{¶30}** At the outset, before we engage in a discussion of merger, we must first deal with the issues regarding who the victims actually were with regard to Love's convictions as the arguments of the parties in this case reflect confusion on this matter.  The confusion seems to stem from a discrepancy between the victims from the specific counts enumerated in the written plea agreement and the victims named in the prosecutor's statement at the change of plea hearing.  The confusion continues into the sentencing hearing, particularly growing from false statements from Love's trial counsel at the time of the sentencing hearing.

**{¶31}** The confusion began when the written plea agreement specifically listed counts of the Indictment that Love agreed to plead guilty to, but did not mention any change as to the victims (or list any victims at all).  The counts in the

Indictment, as listed in the Bill of Particulars, specified certain victims with each count. Specifically, the Bill of Particulars listed the victims of Counts 13-16 (in order) as Servex, Craig Miller Insurance, a temporarily vacant rental unit (thus C&J Realty as the owner), and Hong Kong Buffet. However, at the plea hearing, the prosecutor named victims that did not correspond to the Bill of Particulars for Counts 13-16. Specifically, the prosecutor named as the victims of those counts (in order) as Tobacco Warehouse, GT Professional Services, Stumpo's Pizza, and Advance America.

**{¶32}** The victims named by the prosecutor at the plea hearing for Counts 13-16 *were* named in the Bill of Particulars, but they were victims of different enumerated offenses.[3] Unfortunately, the counts of the indictment named in the written plea agreement did not properly correspond to those victims, which perhaps would have prevented any subsequent confusion. Nevertheless, in his "statement of facts" the prosecutor did name specific victims for Counts 13-16 in open court at the plea hearing, and despite hearing these victims named in open court, Love still plead guilty to the offenses. In doing so, Love specifically interjected to make a brief correction to the prosecutor's statement of facts so that he was on the record on that matter. However, Love did not object or correct the prosecutor regarding the victims that the prosecutor named.

---

[3] The offenses were the same, but the victims were listed as victims of different enumerated offenses, specifically Advance America (Count 17), Stumpo's Pizza (Count 18), GT Professional (Count 19), and Tobacco Warehouse (Count 21).

{¶33} Following the plea hearing, it became clear that the parties had different interpretations of who the victims were of the offenses to which Love pled guilty. Prior to the sentencing hearing, Love's trial counsel filed a memorandum asserting that the appropriate victims were the victims that corresponded to the numbered counts in the written plea agreement, rather than what the prosecutor said in open court at the plea hearing.

{¶34} This matter was taken up at the sentencing hearing, wherein the prosecutor moved to amend the Bill of Particulars to correspond to the victims he specifically named at the plea hearing. The court then engaged in a discussion with the prosecutor and defense counsel, questioning them both whether the prosecutor mentioned the different victims at the plea hearing. Love's counsel then explicitly misled the court by stating that she took notes at the plea hearing and that no victims were mentioned by the prosecutor. As can be seen from the excerpt cited previously, that is a false statement. Based upon her false statement, the trial court overruled the prosecutor's motion to amend the Bill of Particulars.

{¶35} Then, the trial court proceeded to sentencing, but unfortunately only added to the confusion in the record. The trial court ultimately merged two counts: Vandalism, Count 4, and Arson, Count 13. Using the Indictment/Bill of Particulars, these counts were perpetrated against the same victim—Servex (using the prosecutor's statement at the plea hearing, these counts were perpetrated

against Servex (Count 4) and the Tobacco Warehouse (Count 13)). Thus it would appear that the court was using the numbered counts of the plea agreement and the corresponding counts from the Indictment/Bill of Particulars rather than the prosecutor's statement at the plea hearing. However, it would seem if the court was using this method, it also would have merged Counts 5 and 14, which according to the Indictment/Bill of Particulars were a Vandalism and an Arson perpetrated against the same victim—Craig Miller Insurance. Yet without any explanation the trial court did not merge these offenses.

{¶36} Nevertheless, by merging the offenses in Counts 4 and 13, the trial court appeared to side with Love's argument that the prosecutor should be held to the counts listed in the written plea agreement rather than what he stated on the record at the plea hearing. We note that this may have been based in part on being misled by Love's counsel's false statement to the court that the prosecutor did not name any victims at the plea hearing. As such, we condemn this misrepresentation in the strongest terms. However, it is also true that using the numbers in the plea agreement (and the corresponding victims as listed in the Bill of Particulars) would be a legitimate approach for the trial court to take in its discretion as a sanction for the prosecutor failing to properly draft or oversee its own written plea agreement. As we should construe any ambiguity against the State, *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 52, citing *United*

*States v. Johnson*, 979 F.2d 396, 399 (C.A.6, 1992), we therefore evaluate this case in that light and accordingly we proceed with our allied offenses analysis using the victims as mentioned in the Indictment/Bill of Particulars.

{¶37} Thus ultimately the victims of the counts that Love pled guilty to are as follows: Count 1, Servex, Count 3, various (being those individuals at a substantial risk of serious physical harm—those named in the Bill of Particulars included people in nearby Crescent Heights apartments, a bakery owner in close proximity to the fire, and any people in the nearby Wendy's restaurant), Count 4, Servex, Count 5, Craig Miller Insurance, Count 13, Servex, Count 14, Craig Miller Insurance, Count 15, C&J Realty (as owner of the vacant unit), and Count 16, Hong Kong Buffet.

{¶38} With the victims determined, we will now turn to our discussion of merger. "Courts in Ohio, both before *State v. Rance,* 85 Ohio St.3d 632, 1999 Ohio 291, 710 N.E.2d 699 (1999), and after *Johnson,* [*supra,*] have held that when the same course of conduct results in multiple victims, there is a separate animus for each offense." *State v. Anderson*, 1st Dist. No. C—110029, 2012-Ohio-3347, ¶ 61 (Dinkelacker, P.J. concurring in part and dissenting in part). In *State v. Young*, 2d Dist. No. 23642, 2011-Ohio-747, the Second District Court of Appeals noted that "separate convictions and sentences are permitted when a defendant's conduct results in multiple victims." *Young*, at ¶ 39 (citations omitted).

{¶39} The overwhelming body of case law from the Ohio Appellate Districts supports separate offenses for separate victims even when there was a single course of conduct. *State v. Piscura*, 8th Dist. No. 98712, 2013-Ohio-1793, ¶ 17; *State v. Helmbright*, 10th Dist. Nos. 11AP-1080, 11AP-1081, 2013-Ohio-1143, ¶ 32; *State v. O'Neill,* 6th Dist. No. WD10–029, 2011-Ohio-5688, ¶ 34; *State v. Young*, 2d Dist. No. 23642, 2011-Ohio-747, ¶ 39; *State v. Hakim,* 6th Dist. No. L–10–1153, 2011-Ohio-5525; *State v. Craig,* 8th Dist. No. 94455, 2011-Ohio-206, ¶ 70 (citations omitted); *State v. Smith,* 8th Dist. No. 95243, 2011-Ohio-3051; *State v. Sidibeh,* 10th Dist, 10AP-331, 2011-Ohio-712. However, the First District stated in *Anderson*, and Love argues in this case, that a bright-line rule equating separate victims with separate offenses should be discouraged. *Anderson* at ¶¶ 34-40. The 2-1 decision in *Anderson* shows that separate victims equating to separate offenses is not entirely universal, though the dissent in *Anderson* argues the separate victims in that case should have equated to separate offenses, and vigorously contends that the majority is diverging from established case law.

{¶40} Nevertheless, here, there were clearly separate victims that were harmed during the commission of these offenses and the offenses were not committed merely to facilitate another offense as they were determined by a majority in *Anderson*. *Anderson*, ¶ 70 (Dinkelacker, P.J. concurring in part and dissenting in part). As it is Love's burden to show why he is entitled to merger,

we decline to depart from the idea in this particular case that separate victims leads to separate offenses, particularly in light of the fact that *Anderson*'s facts are patently distinguishable from this case.[4]   Thus, in this case, we would find that where the victims are separate and distinct, the offenses should not merge.

{¶41} However, where the victims are the same, the offenses may merge if the offenses were committed as part of the same course of conduct.  In this case the facts read into the record indicated that Love started a fire in the Servex store that engulfed the building in flames and spread throughout the businesses.  It would appear from the limited record that this was then part of a single act and a single course of conduct.  Therefore, the offenses committed against the same victim would, in fact, merge.

{¶42} The trial court merged Counts 4 and 13, a Vandalism and an Arson against Servex, which given our analysis, is appropriate.  Based on the same analysis, the trial court's failure to merge Counts 5 and 14, a Vandalism and an Arson against the same victim—Craig Miller Insurance—was error, as the victim is the same and there was only a single course of conduct.  Thus the trial court erred in failing to merge these two counts.  We also note that with regard to the two counts that the trial court did merge, Counts 4 and 13, the trial court did not direct the prosecutor to elect which offense the prosecutor would like to proceed

---

[4] In *Anderson* the merged offense was determined to be committed merely to facilitate another offense. Specifically, the offenses, Kidnapping and Aggravated Robbery, stemmed from Anderson robbing a bank.

with for the purposes of sentencing. Therefore, while we agree with the trial court that the counts should merge, the proper procedure is for the trial court to direct the State to elect which offense it would like to proceed with for the purposes of sentencing. *See State v. Fairfield*, 8th Dist. No. 97466, 2012-Ohio-5060, ¶ 29. Accordingly, on remand, the court must also direct the State to select between Counts 4 and 13 to proceed with for the purposes of sentencing.

{¶43} Love argues that some of his other counts should merge as well, but as there were separate victims for those offenses, we do not find that they merge in this instance. Love attempts to make the argument that Servex and C&J Realty (the owner of the vacant unit) were the same victim because the entities were owned in part by the same person—Greg Sens. However, it is clear that the business is the victim of the property damage rather than the personal owner of multiple businesses, so the victims are separate.

{¶44} Love also argues that the Hong Kong Buffet had vacated the business property, and thus C&J Realty was the actual victim of the fire rather than the Hong Kong Buffet. However, Hong Kong Buffet was still on the lease and thus was the appropriate victim and the offenses against Hong Kong Buffet and C&J Realty would not merge.

{¶45} Finally, Love contends that the Aggravated Arson should merge with the Arson, and Vandalism against Servex. However, the victims of the

Aggravated Arson as stated in the elements of the offense, the Bill of Particulars, and at the plea hearing were those individuals and persons seriously endangered by the fire at the nearby apartment complex, a nearby bakery, and a Wendy's. This is clearly distinguishable from the elements of Arson and Vandalism, which pertain to property damage only, and thus the victim in the Aggravated Arson is not just the business entity of Servex, so those counts would not merge.

{¶46} In sum, the trial court erred by failing to merge the Vandalism and Arson convictions against Craig Miller Insurance, and erred by failing to direct the prosecutor to elect which charge between Counts 4 and 13 the prosecutor wanted to proceed with for purposes of sentencing. But the court did not err in its decision not to merge any of the remaining counts. Accordingly, Love's first assignment of error is sustained in part and overruled in part.

*Second Assignment of Error*

{¶47} In Love's second assignment of error, he contends that the trial court erred in ordering him to pay restitution for damages relating to offenses for which he was charged but was not convicted.

{¶48} We have held previously that "as a matter of law, an offender cannot be ordered to pay restitution for damage arising from a crime of which he was not convicted." *State v. Williams,* 3d Dist. No. 8–03–25, 2004-Ohio-2801, ¶ 23. However, a defendant can agree to pay restitution for damages relating to

dismissed charges as part of a negotiated plea agreement. *State v. Strickland,* 10th Dist. No. 08AP–164, 2008–Ohio–5968, ¶ 12. A negotiated plea agreement is a contract and the principles of contract law apply. *State v. Bethel,* 110 Ohio St.3d 416, 2006–Ohio–4853, ¶ 50. "Thus, as long as the defendant agrees to make the payment as part of the consideration for the dismissal of the other charges, the defendant may contract to do things that otherwise could not be required by law." *State v. Weimert*, 3d Dist. No. 2-10-35, 2011-Ohio-2846, ¶ 5.

{¶49} In the trial court's sentencing entry, Love was ordered to pay restitution to Servex in the amount of $122,666.61, Craig Miller Insurance in the amount of $500, GT Professional Services in the amount of $1,845.61, Stumpo's Pizza in the amount of $12,922.49, Advance America in the amount of $500, and the Tobacco Warehouse in the amount of $37,645.22. As we determined in the previous assignment of error that the trial court was within its discretion to determine that the victims listed in the Indictment/Bill of Particulars controlled this plea agreement rather than the prosecutor's statement at the plea hearing, there is no conviction against Love related to the damages done to GT Professional Services, Stumpo's Pizza, Advance America, or the Tobacco Warehouse. Thus unless there was an agreement between the parties according to the written plea agreement, the restitution to these "victims" would be facially invalid. In this case, the written plea agreement does not contain such an agreement. Therefore,

the restitution ordered to GT Professional Services, Stumpo's Pizza, Advance America, and the Tobacco Warehouse is improper under our case law. Accordingly, Love's second assignment of error is sustained.

*Fifth Assignment of Error*

{¶50} In Love's Fifth Assignment of error, he argues that the trial court violated his due process rights by ordering him to pay restitution to the Tobacco Warehouse when the order of restitution was not supported by competent, credible evidence in the record.

{¶51} Our disposition of the second assignment of error has rendered this assignment of error moot as we have reversed the trial court's award of restitution to the Tobacco Warehouse. Accordingly, as it is moot, we decline to further address this assignment of error. App.R. 12(A)(1)(c).

*Fourth Assignment of Error*

{¶52} In Love's fourth assignment of error, he contends that the trial court erred in failing to consider Love's ability to pay restitution.

{¶53} Appellate courts review an order of restitution under the abuse of discretion standard. *State v. McNaughton,* 11th Dist. No.2011–L–083, 2012–Ohio–1271, ¶ 28; *State v. Burns,* 8th Dist. No. 95465, 2011–Ohio–4230, ¶ 37. Revised Code 2929.18 permits a trial court to impose financial sanctions on a defendant, including restitution and reimbursements, subject to the defendant's

opportunity to dispute the amounts imposed. Before imposing a financial sanction under R.C. 2929.18, the trial court "shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(5) (this statute was amended effective September 28, 2012, renumbering this provision from (B)(6) to (B)(5).

{¶54} The trial court need not conduct a hearing on the issue of financial sanctions and there are no express factors that the court must take into consideration or make on the record. *State v. Russell,* 2d Dist. No. 23454, 2010–Ohio–4765, ¶ 62, citing *State v. Culver*, 2d Dist. No. 2004—CA—14, 2005–Ohio–1359, ¶ 57. A trial court need not even state that it considered an offender's ability to pay, but the record should contain some evidence that the trial court considered the offender's ability to pay. A trial court may comply with R.C. 2929.19(B)(5) by considering a presentence-investigation report, which includes information about the defendant's age, health, education, and work history. *Id.*; *See, e.g. State v. Dupuis*, 6th Dist. No. L-12-1035, 2013-Ohio-2128, ¶ 44.

{¶55} In this case, the fact that Love was indigent, had no income, was only 18 years old, had never had a job and did not finish high school were all presented to the trial court. In addition, Love's counsel made the argument to the trial court at the restitution hearing that Love had no ability to pay restitution. Furthermore, the pre-sentencing investigation, which the court said it had considered in its

judgment entry of sentencing, stated that Love "has never had a job" and "has always been supported by his family." The PSI further added that Love had "no income, assets, or monthly expenses." Thus the trial court specifically stated in its judgment entry that it had considered a document containing the fact that Love had no money and little means. This has been held to be sufficient consideration of a defendant's ability to pay. *Dupuis*, *supra* at ¶ 44. Accordingly, Love's fourth assignment of error is overruled.

### *Third Assignment of Error*

{¶56} In Love's third assignment of error he contends that the trial court erred in imposing restitution for losses that were not a direct or proximate result of the commission of an offense. Specifically, Love contends that the trial court erred in ordering Love to pay restitution to Stumpo's and Servex for unreimbursed depreciation.

{¶57} A court may not impose restitution in an amount that exceeds "the amount of the economic loss suffered by the victim." R.C. 2929.18(A)(1). "Economic loss" has been defined as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense * * *." R.C. 2929.01(L). Restitution is limited to the actual economic loss, which requires that any losses be offset by any gains. *See State v. Clayton*, 2d Dist. Montgomery No. 22937, 2009-Ohio-7040, ¶ 56.

{¶58} Depreciation is not an asset.  It is defined as "[a] *decline in an asset's value* because of use, wear, obsolescence, or age."  (Emphasis added.) *Black's Law Dictionary* (9th ed. 2009).  In determining the amount of restitution, the definition of economic loss must be strictly construed against the State and in favor of the accused.  R.C. 2901.04(A).

{¶59} Love argues on appeal that the depreciation was not a result of the fire and thus non-compensable.  As we reversed the trial court's award of restitution to Stumpo's, we need not further address Love's argument pertaining to that restitution order.  With regard to the trial court's order for Love to pay restitution to Servex, Greg Sens, the owner of Servex, gave testimony at the restitution hearing that "'damage to the real estate in excess of coverage limit is $63,880.75.    Deductible is $2,500.00.    Depreciation not reimbursed is $39,670.86'."  (Dec. 3, 2012, Tr. at 28).  In addition, Sens testified to other losses of $16,715.00.  (*Id*. at 29).  Adding these dollar figures together, we come up with the trial court's order of restitution to Servex in the amount of $122,666.61.

{¶60} In this case, the victim is claiming that Love should be responsible for paying the cost of buying a new item.  However, that was not the actual economic loss caused by Love's actions. The value of the items was the purchase price of a new item, less the reduction in value caused by its use or the depreciation, not the cost of buying a new item to replace a used item.  The

purpose of restitution is not to provide a windfall to the victim. *See Clayton, supra* and *State v. Beam*, 5th Dist. Delaware No. 06CAA030018, 2007-Ohio-386, ¶ 21. An order for restitution must be limited to the actual economic loss caused by the offense for which Love was convicted. *State v. Rivera*, 8th Dist. Cuyahoga No. 84379, 2004-Ohio-6648, ¶ 15. Therefore, an award of restitution for depreciation is not appropriate in this case. Accordingly, Love's third assignment of error is sustained.

{¶61} For the foregoing reasons, Love's first assignment of error is sustained in part and overruled in part, his second and third assignments of error are sustained, his fifth assignment of error is moot, and his fourth assignment of error is overruled. This cause is remanded to the Marion County Common Pleas Court for resentencing with instructions to merge the appropriate offenses as stated in the first assignment of error, to direct the prosecutor to elect which offenses to proceed with for the purposes of sentencing, and to vacate the improper awards of restitution.

*Judgment Affirmed in Part, Reversed in Part and Cause Remanded*

**WILLAMOWSKI, P.J., concurs.**

**/jlr**

**ROGERS, J., DISSENTS.**

{¶62} I respectfully dissent from the opinion of the majority. Because there was so much confusion between the parties, and by the trial court, as to which counts or victims the pleas were being made I would vacate the plea and remand this matter to the trial court.

{¶63} This court has vacated plea agreements when they are predicated on a mistaken belief about the legal consequences of the plea. *State v. Brock*, 3d Dist. Hancock No. 5-06-27, 2006-Ohio-6681, ¶ 12. In *Brock*, the plea "was premised upon a plea bargain that included [an] erroneous belief by defense counsel, the prosecutor, and the trial court * * *." *Id.* That erroneous belief rendered a part of the plea bargain ineffective, and as a result, the plea was vacated. *Id.*

{¶64} This court has also vacated pleas when it cannot be determined that a defendant has been adequately informed of the consequences of a plea agreement. *State v. Cox*, 3d Dist. Union No. 14-06-07, 2007-Ohio-6023, ¶ 18. In *Cox*, the plea agreement contained inaccurate information regarding when the defendant would be eligible for judicial release. *Id.* While the trial court attempted to correct the error through dialogue with the defendant, this court found that "from our reading of the transcript, we are unable to say the trial court clearly informed Cox regarding the correct terms of judicial release or that Cox understood when he would be eligible for his judicial release." *Id.* As Cox was not adequately

-30-

informed of the consequences of his plea agreement, he was allowed to withdraw his guilty plea. *Id.*

{¶65} Similar to *Brock*, it is unclear what the defense counsel, prosecutor, or trial court believed as to who the actual victims were. As in *Cox*, we cannot say that the trial court adequately informed Love as to the consequences of his plea agreement, namely, who might be entitled to restitution as a result of the plea. Clearly the parties had different interpretations of the counts versus victims, and the trial court had no independent understanding of those issues. It is not the prerogative of this court to make such decisions for them.

{¶66} It is also inconceivable that the State could prove *the substantial risk* of serious physical harm to *persons* located in buildings some distance from the structure that burnt as required for a conviction under Count 3. Aggravated arson requires that the defendant "knowingly * * * creates a substantial risk of serious physical harm to any person other than the offender." R.C. 2909.02(A)(1); *State v. Eggeman*, 3d Dist. Van Wert No. 15-04-07, 2004-Ohio-6495, ¶ 39 (Rogers, J. dissenting).

{¶67} R.C. 2901.01(A)(8) defines substantial risk as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Further, the Ohio Jury Instructions make an effort to emphasize the distinction between a "strong possibility," a

"remote possibility," and a "significant possibility" by offering the option of adding the phrase "even a" to the statutory language in front of the phrase "significant possibility." *Ohio Jury Instructions*, CR Section 509.02. "[T]he language chosen by the General Assembly contemplates three degrees of 'possibility': the highest degree is 'strong,' the middle is 'significant,' and the lowest is 'remote.' For this reason, the Committee added '(even a)' to the statutory definition." *Id*. at comment. "Thus, the statutory definition of substantial risk recommended by the Ohio Jury Instructions reads as follows: 'strong possibility as contrasted with a remote or even a significant possibility, that a certain result may occur or that certain circumstances may exist.' " *Eggeman* at ¶ 40 (Rogers, J. dissenting).

{¶68} For these reasons, I dissent from the majority opinion which affirms the convictions and I would vacate the Appellant's pleas of guilty to all counts.

**/jlr**