[Cite as *State v. Piscura*, 2013-Ohio-1793.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98712**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DAVID J. PISCURA

DEFENDANT-APPELLANT

---

### JUDGMENT:
REVERSED AND VACATED IN PART;
REMANDED FOR RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-559232

**BEFORE:** Jones, P.J., Keough, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** May 2, 2013

**ATTORNEY FOR APPELLANT**

Edward M. Graham
13363 Madison Avenue
Lakewood, Ohio 44107


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: William Leland
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, David Piscura, appeals multiple convictions for aggravated arson, attempted murder, unlawful possession of dangerous ordnance, and possessing criminal tools. We affirm in part and reverse in part.

{¶2} In 2012, Piscura was indicted on several charges in relation to the fire bombing of a house on Russell Avenue in Parma. In Counts 1, 3, and 5, Piscura was charged with aggravated arson in violation of R.C. 2909.02(A)(1). In Counts 2, 4, and 6, he was charged with attempted murder in violation of R.C. 2923.02 and 2903.02(A). In Count 7, he was charged with aggravated arson in violation of R.C. 2909.02(A)(2). In Count 8, he was charged with unlawful possession of dangerous ordnance pursuant to R.C. 2923.17(A). In Count 9, Piscura was charged with possessing criminal tools in violation of R.C. 2923.24(A); the state alleged he possessed an incendiary device, rock, and/or 2004 Toyota with the purpose to use them criminally. Each of the counts contained a forfeiture specification.

{¶3} In Counts 1 and 2, the named victim was Kimberly Stillman. In Counts 3 and 4, the named victim was Jason Hamila. Angeline Zimmerman was the named victim in Counts 5 and 6, and Ronald and Roxanne Churby were the named victims in Count 7. Piscura was indicted along with Anthony Veto. *See State v. Veto*, 8th Dist. No. 98770.

{¶4} Piscura eventually pleaded guilty to the indictment. The trial court ordered a

presentence investigation. In July 2012, the court held the sentencing hearing. Piscura argued that all counts should merge into one count of aggravated arson. The state conceded that Counts 1 and 2, Counts 3 and 4, and Counts 5 and 6 merged for the purposes of sentencing. The state elected to have the court sentence Piscura on Counts 2, 4, and 6, attempted murder.

{¶5} The state gave a recitation of the facts to the court. Ronald and Roxanne Churby owned a rental house on Russell Avenue. Jason Hamila and Angeline Zimmerman lived in the house. Kimberly Stillman, who had dated Anthony Veto, was temporarily staying with Hamila and Zimmerman.

{¶6} In the early morning of January 13, 2012, Piscura and Veto began texting each other. Veto texted Piscura and told him, "I can make three firebombs, and I know one place that needs it. * * * Got all the tools. Just need a ride." Piscura agreed to pick him up. Veto constructed two Moltov cocktails out of glass bottles filled with gasoline. Piscura got Veto and drove to Russell Avenue. Veto had a sledgehammer, rock, and the two Moltov cocktails.

{¶7} Piscura drove up and down Russell Avenue, eventually parking down the street from the target home. Neighbors told police that they saw Piscura's car driving up and down the street and also saw a hooded person approach the Churbys' house. Veto used the rock to break the front window of the house and threw both firebombs into the house. The house instantly went up in flames. Zimmerman and Hamila were awake at the time and were able to rouse Stillman, grab the dog, and escape. The house was a

total loss and the three victims lost all of their personal property.

{¶8} At the sentencing hearing, the trial court heard from the defendant, his mother, the victims, and a state fire investigator. The fire investigator explained how a Moltov cocktail is manufactured and the quick speed with which the house burned.

{¶9} The trial court sentenced Piscura to a concurrent sentence of 6 years in prison on Counts 2, 4, 6, and 7, concurrent to 6 months in prison on Counts 8 and 9.

{¶10} Piscura now appeals, raising one assignment of error for our review:

The court committed plain error in failing to merge all counts as allied offenses of similar import.

{¶11} Piscura argues that all nine of his offenses should merge into a single offense because they were committed with the same animus.

{¶12} The merger statute, R.C. 2941.25, provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶13} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 42, the Ohio Supreme Court clarified that the allied offenses statute "instructs us to look

at the defendant's conduct when evaluating whether his offenses are allied." First, courts must determine "whether it is possible to commit one offense and commit the other with the same conduct * * *." *Id.* at ¶ 48. Second, "[i]f multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50. However, if the commission of one offense will never result in the commission of the other, "or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶ 51.

**{¶14}** Accordingly, we determine whether the multiple offenses can be committed with the same conduct, and, if so, whether the offenses were in fact committed by a single act, or performed with a single state of mind. *See id.* at ¶ 49.

**{¶15}** It is with these concepts in mind that we review the assigned error.

<u>Attempted Murder and Aggravated Arson — Multiple Victims</u>

**{¶16}** Piscura argues that Counts 2, 4, 6, and 7 should merge because his conduct was a single act even though the counts involved separate victims. We disagree.

**{¶17}** It is well-settled in this district that when an offense is defined in terms of conduct towards another, then there is dissimilar import for each person affected by the

conduct. *See State v. Patterson*, 8th Dist. No. 98127, 2012-Ohio-5511, ¶ 35, citing *State v. Poole*, 8th Dist. No. 94759, 2011-Ohio-716; *State v. Phillips*, 75 Ohio App.3d 785, 790, 600 N.E.2d 825 (2d Dist.1991), citing *State v. Jones*, 18 Ohio St.3d 116, 118, 480 N.E.2d 408 (1985). In other words, where a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each victim such that the offenses are not allied, and the defendant can properly be convicted of and sentenced on multiple counts. *State v. Chaney*, 8th Dist. No. 97872, 2012-Ohio-4933, ¶ 26, citing *State v. Gregory*, 90 Ohio App.3d 124, 129, 628 N.E.2d 86 (12th Dist. 1993).

{¶18} In *State v. Collins*, 8th Dist. No. 95415, 2011-Ohio-3241, this court found that

> while the aggravated arson and felony murder counts merge, the separate counts as to each victim remain. Although Collins set one fire, he created a substantial risk of harm or injury to four children. *See also State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 48 (rejecting defendant's argument that he set only one fire and therefore committed only one arson; court held that defendant committed six counts of aggravated arson because defendant knowingly set a fire that created a substantial risk of serious harm or injury to six people).

*Id.* at ¶ 21.

{¶19} In this case, the facts as they are set forth in the record show that there were three people in the house at the time of the fire; each victim corresponds to one count of attempted murder. As to Count 7, aggravated arson, Piscura's conviction under that count for knowingly causing physical harm to the Churbys' house was separate and apart from attempting to cause the death of Stillman, Hamila, and Zimmerman.

**{¶20}** Therefore, Piscura's convictions on Counts 2, 4, 6, and 7 do not merge.

<u>Possessing Criminal Tools and Possession of Dangerous Ordnance</u>

**{¶21}** Piscura argues that his convictions for possessing criminal tools and possession of dangerous ordnance should merge into each other and into the other counts, because his possession of the firebombs, rock, and motor vehicle "concern nothing more than implements needed to perform the firebombing act. They had no independent criminal purpose."

**{¶22}** R.C. 2923.24, possession of criminal tools, provides that no person shall possess or have under his control any substance, device, instrument or article with the purpose to use it criminally. R.C. 2923.17(A), the statute governing unlawful possession of dangerous ordnance, provides that no person shall knowingly acquire, have, carry or use any dangerous ordnance.

**{¶23}** Historically, this court has declined to find that possessing criminal tools and possessing a dangerous ordnance merge as allied offenses of similar import. *See State v. Garay*, 8th Dist. No. 57704, 1990 Ohio App. LEXIS 5656 (Dec. 20, 1990); *State v. Lane*, 8th Dist. No. 56707, 1990 Ohio App. LEXIS 2433 (June 14, 1990). However, *Johnson* now requires courts to focus on the particular conduct of the specific defendant at issue. *Id.* at syllabus. The analysis must be driven by the record and the evidence and theories the state actually introduced, not retrospective hypothecating about what charges a defendant's conduct could have supported. *Id.* at ¶ 56-57; 69-70 (O'Connor, J., concurring).

**{¶24}** Recently, in *State v. Fairfield*, 8th Dist. No. 97466, 2012-Ohio-5060, ¶ 29, this court found that, post-*Johnson*, possession of a dangerous ordnance, possession of criminal tools, and receiving stolen property were allied offenses of similar import that merge. The defendant was charged with 75 counts that concerned the possession of two shock tubes, two spools of detonation cord, four wrapped blasting caps, four unwrapped blasting caps, eight booby traps, five igniters, an actuator, and a jar of napalm. This court noted that

> [p]rior to the *Johnson* case, the offenses of possession of criminal tools, receiving stolen property, and possession of a dangerous ordnance would not merge, because the statutory elements of each requires a different element. However, that is no longer our focus in determining the merging of allied offenses. Our focus is now whether it is possible for the offenses to be committed by the same conduct. Fairfield's receiving the stolen property in the instant case, also results in him * * * unlawfully possessing a dangerous ordnance and possessing a criminal tool.

*Id.* at ¶ 26.

**{¶25}** Likewise, in this case, Piscura's conduct of possessing the firebomb is sufficient to support a charge and conviction of both possession of a dangerous ordnance and possessing criminal tools. *See State v. Adkins*, 80 Ohio App.3d 211, 222-223, 608 N.E.2d 1152 (4th Dist.1992) (Grey, J., dissenting) (offenses are the "same" when they are the same in type, place, time, and number); *State v. Houston*, 26 Ohio App.3d 26, 498 N.E.2d 188 (8th Dist.1985) (possession of a dangerous ordnance and possessing criminal tools are allied offenses, when the sawed-off shotgun was both the dangerous ordnance and criminal tool.)

**{¶26}** We are cognizant that the state indicted the possession of criminal tools

charge to indicate that Piscura possessed the firebomb, rock, and/or motor vehicle; rather than delineating each "tool" under a separate charge, the state chose to combine the items under one charge. When the state chooses to do this, then for sentencing purposes, we must construe the statute governing allied offenses in favor of the defendant. *See* R.C. 2901.04(A) (statutes "defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused.") Accordingly, because the state identified under the indictment that the firebomb was both the dangerous ordnance and a criminal tool, the result is that Count 8 possession of a dangerous ordnance and Count 9 possessing criminal tools are allied offenses.

{¶27} Perhaps if Piscura had been indicted under R.C. 2923.17(B) for illegally manufacturing the firebombs instead of the subsection prohibiting possession (R.C. 2923.17(A)), we could consider the manufacture of the firebombs separate and distinct from possessing criminal tools. *See, e.g., State v. Ballard*, 8th Dist. No. 98355, 2013-Ohio-373, ¶ 14, citing *State v. Sludder*, 3d Dist. No. 1-11-69, 2012-Ohio-4014 ("[w]hen one offense was complete before another offense occurred, the two offenses are committed separately for purposes of R.C. 2941.25(B), notwithstanding their proximity in time and that one was committed in order to commit the other.")

{¶28} Looking at the conduct and animus of the defendant, the instrumentalities involved, the time frame under which this occurred, the matter in which the charges were indicted, and the state's theory of the case, Count 8, possession of a dangerous ordnance and Court 9, possessing criminal tools are allied offenses and merge for sentencing

purposes.

## Additional Merger Not Warranted

{¶29} Next, we consider whether Counts 8 and 9 merge into the other counts. We find that they do not.

{¶30} Piscura was convicted of attempted murder in violation of R.C. 2903.02 and 2923.02(A), which, when read together, provide that no person shall purposely or knowingly attempt to cause the death of another. Piscura was also convicted of aggravated arson in violation of R.C. 2909.02(A)(2), which states that "[n]o person, by means of fire or explosion, shall knowingly cause physical harm to any occupied structure."

{¶31} In determining whether a separate animus exists for two offenses, a court may examine "case-specific factors such as whether the defendant at some point broke 'a temporal continuum started by his initial act,' [or] whether facts appear in the record that 'distinguish the circumstances or draw a line of distinction that enables a trier of fact to reasonably conclude separate and distinct crimes were committed.'" *State v. Roberts*, 180 Ohio App.3d 666, 2009-Ohio-298, 906 N.E.2d 1177, ¶ 14 (3d Dist.), citing *State v. Williams*, 8th Dist. No. 89726, 2008-Ohio-5286.

{¶32} Here, the Moltov cocktails used to firebomb the house had to be constructed. The arson investigator stated that one firebomb was made from a liquor bottle and the other fashioned from a canning jar. Both devices contained wicks and were designed to have an ignitable liquid in the interior. The text messages sent

between Piscura and Veto showed that Veto constructed the firebombs while Piscura was on his way to pick him up. Specifically, Veto texted to Piscura: "I can make three firebombs, and I know one place that needs it. * * * Got all the tools. Just need a ride." And later Veto texted: "We have got to prepare. Are you on your way? Got rags and a bottle and a sledgehammer ready. I'm going to gas them up as soon as you get here." Piscura picked Veto up and the two men took the newly manufactured firebombs, a rock, and a sledgehammer. They drove to the Churbys' house where Veto used the rock to break the window and throw the firebombs into the home.

{¶33} Although we consider the acts of this particular defendant, we look to prior cases for illustration and guidance purposes. In *State v. Ayers*, 12th Dist. Nos. CA2010-12-119 and CA2010-12-120, 2011-Ohio-4719, the court found that although it is possible to commit aggravated robbery and unlawfully possession of a dangerous ordnance with the same conduct, the defendant did not commit the offenses with the same animus. The court noted: "As the record clearly indicates, appellant had the sawed-off shotgun prior to entering the Speedway store. In turn, by acquiring the unlawful dangerous ordnance prior to robbing the Speedway store, the offenses were undoubtedly committed with separate and distinct conduct, and not * * * in a single act committed with a single state of mind." *Id.* at ¶ 32.

{¶34} To illustrate our analysis in this case, it is helpful to consider rape and kidnapping cases where the perpetrator moves the victim from one location to another. Whether the offenses are considered allied depends on whether the restraint or movement

was incidental to the crime or was "substantial so as to demonstrate a significance independent of the other offense." *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), syllabus. Even though the defendant's ultimate purpose of moving the victim was to perpetrate the rape, courts have repeatedly held that rape and kidnapping are not allied when the asportation of the victim is substantial so as to be independent of the rape. *See, e.g., State v. Rose*, 12 Dist. No. CA2011-11-214, 2012-Ohio-5607 (holding that the rape and kidnapping were not allied offenses subject to merger because defendant forcefully moved victim from tavern across parking lot to car and then committed the rape.)

{¶35} In *State v. Sludder*, 3d Dist. No. 1-11-69, 2012-Ohio-4014, ¶ 14, the court determined that breaking and entering and theft were not allied offenses even though the two offenses were committed close in time. "Because one offense was complete before the other offense occurred, the two offenses were committed separately for purposes of R.C. 2941.25(B), notwithstanding their proximity in time and that one was committed in order to commit the other." *Id*., citing *State v. Turner*, 2d Dist. No. 24421, 2011-Ohio-6714, ¶ 24.

> To conclude otherwise would encourage those who break into buildings to steal to proceed with the theft since the offenses would merge for purposes of conviction and sentence. The law ought to encourage criminals to stop their course of criminal conduct and to demand punishment for their further criminal acts.

*Sludder* at *id.*

{¶36} The same is equally true in this case. Piscura's conduct of possessing the

firebomb was separate and distinct from the crimes of attempted murder and aggravated arson because transporting the firebombs to the residence and the subsequent act of throwing them the residence was done with a separate animus and conduct. There is a distinction and break in the continuum of events that allowed the trial court to reasonably conclude that separate and distinct crimes were committed.

{¶37} Therefore, possessing the criminal tools and dangerous ordnance was separate and distinct from the subsequent act of transporting and throwing them into the residence and committing the crimes of attempted murder as charged in Counts 2, 4, and 6, and aggravated arson as charged in Count 7.

{¶38} Again, pursuant to *Johnson*, we are called to review this defendant's specific conduct in this case; each case requires a individual and thoughtful analysis by first the trial court and then the reviewing court.

{¶39} Accordingly, based on the specific facts of this case and the conduct of this defendant, Counts 8 and 9 merge into each other but do not merge into any other count. We reverse and vacate Piscura's sentence as to Counts 8 and 9 only, and remand for a new sentencing hearing on the offense that remains after the state selects which allied offense to pursue. *Fairfield*, 8th Dist. No. 97466, 2012-Ohio-5060 at ¶ 29, citing *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381.

{¶40} The sole assignment of error is overruled in part and sustained in part.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS IN
PART AND DISSENTS IN PART WITH
SEPARATE OPINION

MARY EILEEN KILBANE, J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶41}** I concur with the majority's decision with respect to its disposition of Counts 1-7, but respectfully dissent on Count 8 (unlawful possession of a dangerous ordnance) and Count 9 (possessing criminal tools). I would find that these counts are not allied offenses, and thus, they do not merge for purposes of sentencing.

**{¶42}** As the majority noted, when evaluating offenses of similar import, the offenses will not merge if the offenses are committed separately, or if the defendant has a separate animus for each offense. *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 50. The *Johnson* court recognized that the analysis of allied offenses

> may be sometimes difficult to perform and may result in varying results for the same set of offenses in different cases. But different results are permissible, given that the statute instructs courts to examine a defendant's conduct — an inherently subjective determination. Thus, a scenario might

arise * * * in which one court finds that an aggravated robbery can be and was committed without also committing a kidnapping, if, for instance, "a pickpocket points a gun at the victim, but the victim does not know it, and therefore suffers no restraint of his liberty," while in another case, the court may determine that the commission of an aggravated robbery in that case would also constitute a kidnapping, because "a weapon that has been shown * * * during the commission of a theft offense * * * forcibly restrain[ed] the liberty of another."

*Id.* at ¶ 52, quoting *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, ¶ 21, 29 (Moyer, C.J., dissenting).

**{¶43}** In *Johnson*, the Ohio Supreme Court found the crimes of felony murder and child endangering were based upon the same conduct for purposes of R.C. 2941.25. Thus, the court concluded that defendant's conduct of beating the victim qualified as the commission of child abuse, which resulted in the victim's death, thereby qualifying as the commission of felony murder. *Id.* at ¶ 56-57.

**{¶44}** In the instant case, I would find that unlawful possession of a dangerous ordnance and possession of criminal tools are not allied offenses. While the state identified the firebomb as both the criminal tool and the dangerous ordnance, the state also identified a rock and/or motor vehicle as the criminal tool. The possessing criminal tools charge, as indicted, states that Piscura

did possess or have under the person's control any substance, device, instrument, or article, to wit: an Incendiary Device(s) and/or a Rock and/or a 2004 Toyota Camry Solara Automobile, with purpose to use it criminally.

FURTHERMORE the An (*sic.*) Incendiary Device(s) and/or a Rock and/or a 2004 Toyota Camry Solara Automobile, involved in the offense were intended for use in the commission of a felony, to wit: [Attempted Murder and/or Aggravated Arson.]

**{¶45}** The offenses were based upon the following conduct. Veto was at home when he constructed the firebombs with glass bottles, rags, and gasoline. He then intended to use the firebombs on the Churby home where his ex-girlfriend was living. He enlisted Piscura's assistance with his plan. He texted to Piscura: "Just need a ride. Got rags and a bottle and a sledgehammer ready. I'm going to gas them up as soon as you get here." Piscura agreed to pick Veto up and drive him to the Churbys' home. He responded to Veto: "Sweet. * * * [I'm in] your driveway." Piscura then drove Veto to the Churbys' house, where Veto first used a rock to break the front window and then threw both firebombs into the house. When the firebombs hit the home, the home exploded.

**{¶46}** The conduct of acquiring the firebombs constituted unlawful possession of a dangerous ordnance under R.C. 2923.17(A).[1] This act was committed at a separate time and place, and with a separate animus from the conduct of then driving to the Churbys' home and first using the rock to break the front window and then using the firebombs to set the house on fire. The indictment before us lists, and Piscura pled guilty to, the possession of the firebombs and/or the rock and/or the motor vehicle. The charge lists the criminal tools in the conjunctive and disjunctive, therefore, I would find that the rock and motor vehicle constitute the possession of criminal tools under R.C. 2923.24(A).[2]

---

[1] R.C. 2923.17(A) provides: "[n]o person shall knowingly acquire, have, carry, or use any dangerous ordnance."

[2] R.C. 2923.24(A) provides: "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally.

Thus, when looking at the conduct and animus of the defendant, the different instrumentalities involved, the charges as indicted, and the charges Piscura pled guilty to, I would find that Count 8 (unlawful possession of a dangerous ordnance) and Count 9 (possessing criminal tools) are not allied offenses and do not merge for sentencing purposes.

{¶47} Accordingly, I would overrule the sole assignment of error in its entirety.