[Cite as *State v. Crawley*, 2014-Ohio-921.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99636**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WILLIAM H. CRAWLEY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-565807

**BEFORE:** McCormack, J., Boyle, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 13, 2014

**ATTORNEY FOR APPELLANT**

J. Gary Seewald
1419 W. 9th St., 3rd Floor
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: James Hofelich
Gregory Paul
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

**{¶1}** Defendant-appellant, William H. Crawley, appeals his convictions for arson and aggravated arson. For the reasons that follow, we affirm in part and reverse in part.

## Procedural History

**{¶2}** On August 17, 2012, Crawley was indicted as follows: (1) Count 1—aggravated arson, in violation of R.C. 2909.02(A)(1), with respect to Dan Rogers; (2) Count 2 — aggravated arson, in violation of R.C. 2909.02(A)(2), with respect to Sterling Valley Trucks (a.k.a. Valley Freightliner and Cleveland Freightliner), an occupied structure; and (3) Counts 3 through 24 — arson, in violation of R.C. 2909.03(A)(1). A jury trial was held on January 30, 2013. After the state rested, defense counsel moved for dismissal under Crim.R. 29. The trial court denied Crawley's motion. Crawley renewed his motion prior to the court's instructions to the jury, which was again denied by the trial court.

**{¶3}** On February 6, 2013, the jury found Crawley guilty on all counts. The trial court sentenced Crawley to nine years on Count 1, seven years on Count 2, and 12 months on each of Counts 3-24. The court ordered Counts 1 and 2 to be served consecutively and Counts 3-24 to be served concurrently with each other and concurrent with Counts 1 and 2, for an aggregate sentence of 16 years.

## Substantive Facts

{¶4}   On Monday, August 6, 2012, Valley Freightliner,[1] a new truck dealership located in Brook Park, Ohio, that sells and services all models of trucks, suffered a catastrophic loss due to fire.   Crawley was employed as a "garage man" at Valley Freightliner.   His duties included removing trash, delivering trucks, picking up trucks, and road-testing trucks if needed.   Crawley would also perform some oil changes on the service department pickup trucks.

{¶5}   On the day in question, Crawley arrived for work at approximately 5:30 a.m. for his 7:00 a.m. shift and waited in the driveway.   A few moments later, Crawley's supervisor at Valley Freightliner, Dan Rogers, arrived.   Rogers unlocked the gate at the facility's W. 150th Street entrance, pulled into the employee's parking lot, and permitted Crawley on the premises.   Crawley pulled his vehicle in and parked near Rogers's vehicle.   Crawley smoked a cigarette outside while Rogers entered the side door of the building, turned off the premises's alarm, and turned on the lights and compressor. Rogers then entered the service office in order to prepare for the day's work.   Rogers and Crawley were the only people on the premises at this time.

{¶6}   Rogers was in the service office preparing repair orders when, shortly after entering the office, he heard Crawley yelling his name from the shop.   Rogers walked out of the service office to find Crawley, emotional and upset, standing outside of the

---

[1]While the indictments and the transcript in this case refer to the truck dealership in multiple ways, for purposes of this opinion, we will address the victim as "Valley Freightliner."

building, on the east side, located between Bay 1 and Bay 2. When Rogers approached Crawley, Crawley told him that a truck was on fire. Thinking Crawley meant his personal truck that he drove to work that morning, Rogers looked over at his own truck. Crawley then told him that it was the truck in Bay 2 on the west side of the shop that was on fire. Crawley's responsibilities did not include working on the truck in Bay 2.

{¶7} Rogers testified that Bay 2 is approximately 35 feet from the service office and is the second bay from the office. He stated that when he walked over to Crawley, he did not see or smell anything unusual.

{¶8} When he looked inside the building, Rogers stated that he saw a fire on top of the hood of the truck and a fire under the truck and he began to walk toward the truck. Rogers testified that he was about ten feet away from the truck when Crawley told him to "get out of there before it explodes." Rogers then turned to get a fire extinguisher in an attempt to put out the fire, and out of the corner of his eye, he saw the front of the truck engulfed in flames. Crawley did not follow Rogers into the building. Rogers called 911 at 5:47 a.m. while walking through the shop to the west "man door," and he opened the first bay door on the west side about halfway. Rogers stated that he thought if the fire department could get there quickly enough, they might be able to put it out. Rogers then walked out of the shop, only to return shortly thereafter, remembering that he left his keys inside. When he went back inside, he found the entire shop filled with black smoke and he could not see anything. Approximately three to four minutes after calling 911, the police arrived on the scene, followed by the fire department.

{¶9}   Rogers testified that within five minutes of speaking with a police officer on the scene, "you can hear drums exploding, something exploding in the building." And by 6:00 a.m. "there were flames coming out of the roof of the building."  Rogers testified that there were several flammable materials in the building at the time of the fire, including "brake cleaning," oil, diesel fuel, acetylene torches, and starting fluid.  Rogers stated that Crawley would not have been working with any of these flammable materials on the morning of the fire.

{¶10} Lieutenant David McCarthy of the Brook Park fire department was one of the first firefighters on the scene.  He testified that while en route to Valley Freightliner after receiving the call from dispatch, he could see "a very heavy plume of black smoke in the sky from several miles away."  Upon arriving on the scene, Lieutenant McCarthy stated that all the service areas where the mechanics work on the trucks were "entirely involved in fire and all the vehicles in there were involved in fire."  Lieutenant Patrick Johnson   of the Brook Park fire department's fire prevention bureau also testified that he could see "thick, black smoke * * * coming through the sky" while responding to the call.  He stated that, at 6:30 a.m., when he was approximately 20 miles away from the scene, he could see the smoke.  He also testified that the fire at Valley Freightliner was a three-alarm fire, with at least three dozen firefighters responding to the fire, including firefighters from Parma, Parma Heights, Middleburg Heights, Berea, Cleveland, and the Cleveland airport fire department.  According to Lieutenant Johnson, in his 18 years with

the Brook Park Fire Department, the three-alarm fire at Valley Freightliner was one of the largest fires in the city of Brook Park.

{¶11} In addition to the Brook Park fire department on the scene, the fire's investigation was conducted by Todd Stitt of the Fire, Explosion, and Investigation Bureau of the Ohio State Fire Marshal's Office, Charles Hanni, an arson investigator with the marshal's office, and Don Illig, special agent with the Cleveland office of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Lieutenant Johnson testified that the marshal's office and ATF were called in due to the high dollar loss value of the commercial property.

{¶12} On August 9, 2012, during an interview with Investigator Stitt and Special Agent Illig at the ATF offices, Crawley denied any involvement in the cause of the fire. However, after Crawley failed a polygraph test, he admitted to causing the fire. Crawley offered approximately four different versions of the events of August 6 before he settled on his final version. He admitted to using a red plastic gas container to pour fuel onto the seat of the cab of the truck in Bay 2. He stated that he then lit the fluid in the cab with his lighter, closed the cab door, and disposed of his lighter in a blue drum that was being used as a trash can. Crawley stated that he set the fire because "for the last several years, I have been racially discriminated against by Jeff B., who is the director of Valley Sterling Truck dealership located in Brook [P]ark." Crawley memorialized his confession in both written and orally recorded form. Lieutenant Johnson testified that he spoke with ATF a couple of days after the fire and, based upon information he received

from ATF, he collected a red plastic gas can from a work bench near the truck in Bay 2 and a lighter from a blue barrel used as a trash can that was located in Bay 2. Both items were turned over to the police department.

{¶13} Jeffrey Britenbucher, the fixed operations manager at Valley Freightliner, is responsible for the parts and service departments and all matters concerning the building that housed Valley Freightliner. Britenbucher stated that it was his job to keep the business operational. As early as 8:00 a.m. on the morning of the fire, he began to put a plan together in an effort to continue the business and find work for Valley Freightliner's employees.

{¶14} Britenbucher's duties also included evaluating the property damage and assessing and reporting loss to the insurance company. Within a matter of days after the fire, when he was permitted to enter the building, he began to sort through the damaged property. He testified at trial regarding the ownership and value of all of the property damaged by the fire, including the building, the business, the vehicles, and the personal property of the technicians.

{¶15} Britenbucher testified that, in the course of examining and assessing the property that was damaged or destroyed by the fire, he prepared a list for the insurance company of the vehicles that were in the shop at the time of the fire. The list, offered as the state's exhibit No. 58, itemized the owner of the truck, the truck, the mileage on the truck, and the contact name. He further testified that he, along with the individual technicians employed by Valley Freightliner and the insurance company, sorted through

the tool boxes and catalogued the technicians' respective losses. In doing so, he prepared a list of personal property loss suffered by the technicians for evaluation by the insurance company. This list, offered as the state's exhibit No. 59, identified 13 technicians and the total value of the loss suffered by each technician. The total loss suffered by the technicians was valued at $403,996.65.

{¶16} Finally, Britenbucher testified as to the total loss of essential shop tools and equipment that were in the building and were owned by Valley Freightliner. He stated that he prepared a list of the value of these items for insurance purposes. This list, offered as the state's exhibit No. 60, identified the total loss of equipment and tools owned by Valley Freightliner as $263,007.45.

### Assignments of Error

I. In a prosecution for aggravated arson, [R.C.] 2909.02(A)(1), the state must prove that the Defendant created a "substantial risk of serious physical harm to any person." In this case, the State failed to provide "sufficient" evidence that the Defendant created "a substantial risk of serious physical harm" to Mr. Rogers.

II. The direct examination of Jeffrey Britenbucher relating to both the ownership and monetary values of the motor vehicles and the personal tools of the workers at Valley Freightliner violated the Sixth Amendment to the Unites States Constitution, Confrontation Clause, because the Court allowed the admission of testimonial statements of a witness who did not appear at trial as to ownership and damages suffered to the personal property including motor vehicles, destroyed in the arson, thereby depriving the Defendant of an opportunity for cross-examination.

III. The trial court committed plain error and violated [R.C.] 2941.25 by failing to merge Counts 3-24 pursuant to [R.C.] 2941.25.

IV.     The trial court committed plain error and violated [R.C.] 2941.25 by

failing to merge Counts 1 and 2 pursuant to [R.C.] 2941.25.

**Sufficiency of the Evidence**

{¶17} In his first assignment of error, Crawley claims that the state failed to provide sufficient evidence to support his conviction for aggravated arson as alleged in Count 1 of the indictment because there was insufficient evidence that he created a "substantial risk of serious physical harm" to Dan Rogers.

{¶18} A Crim.R. 29(A) motion challenges the sufficiency of the evidence. When reviewing a challenge of the sufficiency of the evidence, an appellate court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶19} Crawley was convicted of aggravated arson in violation of R.C. 2909.02(A)(1), which provides that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender." The term "knowingly" is defined by R.C. 2901.22(B):

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶20} The term "substantial risk" is defined in R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." The statute provides that "serious physical harm to persons" includes physical harm that "carries a substantial risk of death." R.C. 2901.01(A)(5).

{¶21} Here, Rogers testified that he was only ten feet from the burning truck when Crawley yelled for him to "get out of there before it explodes." Crawley's warning evinces his knowledge that an explosion was imminent. Moreover, there was a strong possibility that Rogers, being the supervisor on the grounds at the time the fire started, would attempt to control any damage caused by the fire.

{¶22} Rogers did, in fact, enter the building and retrieve a fire extinguisher in the hopes of putting the fire out. By this time, the entire truck was engulfed in flames. Crawley remained outside, away from the fire he created. Rogers called 911 while walking through the building in order to open the doors and provide access to the fire

department. After opening the doors, Rogers walked outside, only to immediately return to retrieve his keys. Upon returning, the entire building was full of black smoke.

{¶23} The evidence also shows that police arrived on the scene approximately three to four minutes after Rogers called 911, and within five minutes of police arriving on the scene, there were explosions in the building. And by 6:00 a.m., less than 15 minutes from the time Rogers entered the building and called 911, there were flames coming out of the roof of the building. Lieutenant Johnson testified that the three-alarm fire at Valley Freightliner was one of the largest fires in the city of Brook Park in his 18 years with the Brook Park Fire Department.

{¶24} In light of the foregoing, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could conclude that there was sufficient evidence to demonstrate that Crawley knowingly created a substantial risk of serious physical harm to Dan Rogers.

{¶25} Crawley's first assignment of error is overruled.

### Testimony of Jeffrey Britenbucher

{¶26} In his second assignment of error, Crawley claims that the testimony of Jeffrey Britenbucher as to the ownership and value of the items damaged by the fire violated the Confrontation Clause. We review alleged violations of the Confrontation Clause de novo. *State v. Smith*, 162 Ohio App.3d 208, 2005-Ohio-3579, 832 N.E.2d 1286, ¶8 (8th Dist.), citing *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir.2004).

**{¶27}** The Sixth Amendment to the United States Constitution grants the accused the right "to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Nontestimonial hearsay, however, "while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

**{¶28}** The Ohio Supreme Court noted that *Crawford* distinguished between testimonial and nontestimonial statements. *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 81. "Although the court did not provide a comprehensive definition of testimonial statements, it indicated that business records are, 'by their nature,' not testimonial." *Craig* at ¶ 81, quoting *Crawford* at 56. Generally speaking, business records are not testimonial "because they are prepared in the ordinary course of regularly conducted business and are by their nature not prepared for litigation." *State v. Sims*, 8th Dist. Cuyahoga No. 89261, 2007-Ohio-6821, ¶ 7; *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (finding business records are generally admissible absent confrontation because they were created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial, and they are, therefore, not testimonial).

**{¶29}** Evid.R. 803(6) creates a hearsay exception for "records of regularly conducted activity." This rule excepts business records from exclusion at trial if they are made in the course of a regularly conducted business activity "because the courts presume that such records are trustworthy given the self-interest to be served by the accuracy of such entries." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 21, citing *Weis v. Weis*, 147 Ohio St. 416, 425-426, 72 N.E.2d 245 (1947).

**{¶30}** In order to qualify for the business-records exception, a record must meet the following criteria: (1) the record must be one recorded regularly in a regularly conducted activity; (2) a person with knowledge of the act, event, or condition recorded must have made the record; (3) it must have been recorded at or near the time of the act, event, or condition; and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness. *State v. Boiani*, 8th Dist. Cuyahoga No. 98314, 2013-Ohio-1342, ¶ 29, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.

**{¶31}** Here, Britenbucher testified, without objection, as a witness for the state in his capacity as the fixed operations manager for Valley Freightliner. In this capacity, he was responsible for the parts and service departments and all matters concerning the building that housed Valley Freightliner. His duties included evaluating the damage to the building, the business, the vehicles, and the personal property of the technicians, and assessing and reporting the loss to the insurance company.

**{¶32}** Britenbucher testified that he began to evaluate and assess the damaged property as soon as he was permitted inside the building after the fire. He participated directly in the estimation of losses sustained by Valley Freightliner, the owners of the vehicles located on the property, and the 13 diesel technicians who lost their tools and toolboxes in the fire. In the course of evaluating and assessing the damaged property, he assisted in the preparation of itemized lists of the personal property loss suffered by Valley Freightliner and the individual owners. These lists were submitted to Valley Freightliner's insurance company for purposes of processing insurance claims. We can presume that such records are trustworthy because they were prepared by someone with competent knowledge of the facts recorded and whose job included preparing such records in the regular course of business. Moreover, there is nothing in the record to indicate that the information prepared by Britenbucher for Valley Freightliner's insurance company was inaccurate or untrustworthy. *See Weis,* 147 Ohio St. 416, 72 N.E.2d 245.

**{¶33}** In light of the foregoing, we find no error in the admission of Britenbucher's testimony and the corresponding documents that pertained to the ownership and value of the items damaged by the fire. Such evidence was reliable, nontestimonial hearsay that qualifies for the business-record exception under Evid.R. 803(6). As such, there was no violation of the Confrontation Clause.

**{¶34}** Crawley's second assignment of error is overruled.

### Allied Offenses

{¶35} In his third assignment of error, Crawley claims that the trial court erred in failing to merge Counts 3-24 of the indictment pursuant to R.C. 2941.25. Counts 3-24 charge Crawley with arson in violation of R.C. 2909.03(A)(1). The counts are identical except that each count identifies a different named victim and a different type of property loss. Crawley argues that Counts 3-24 arose from the same conduct, with the same animus, and they should therefore have merged.

{¶36} In his fourth assignment of error, Crawley contends that the trial court erred in failing to merge Counts 1 and 2. Count 1 charged Crawley with aggravated arson in violation of R.C. 2909.02(A)(1), alleging Crawley knowingly created a substantial risk of serious physical harm to Dan Rogers. Count 2 charged Crawley with aggravated arson in violation of R.C. 2909.02(A)(2), alleging Crawley created a substantial risk of serious physical harm to Valley Freightliner, an occupied structure. Crawley argues, once again, that each count arose from the same conduct and the same animus and they should therefore merge.

{¶37} Our review of an allied offenses question is de novo. *State v. Webb*, 8th Dist. Cuyahoga No. 98628, 2013-Ohio-699, ¶ 4, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶38} The merger statute, R.C. 2941.25, states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶39} Ohio courts have long used a two-prong test to determine whether multiple offenses should be considered allied offenses and merged. In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Supreme Court of Ohio instructed that, in applying the two-prong test, the particular defendant's conduct must be considered. In the most recent allied offenses case from the Supreme Court of Ohio, *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, the court reiterated the two-prong test as follows:

* * * The first prong looks to the import of the offenses and requires a comparison of their elements. If the elements "correspond to such a degree that the commission of one offense will result in the commission of the other," the offenses share a similar import. Only then can the merger analysis proceed to the second prong. The second prong looks to the defendant's conduct and requires a determination whether the offenses were committed separately or with a separate animus. If the offenses were committed by the same conduct and with a single animus, the offenses merge.

(Citations omitted.) *Id*. at ¶ 13.

**{¶40}** According to *Johnson*, if it is found that the offenses can be committed by the same conduct, the court must then determine whether the offenses were committed by the same conduct, i.e. "a single act, committed with a single state of mind." *Johnson* at ¶ 49. Stated differently, multiple offenses are "allied" "if the defendant's conduct is such that a single act could lead to the commission of separately defined offenses, but those separate offenses were committed with a state of mind to commit only one act." *State v. Thompson*, 8th Dist. Cuyahoga No. 99628, 2014-Ohio-202, ¶ 18.

**{¶41}** Recently, in an en banc decision in *State v. Rogers*, 2013-Ohio-3235, 994 N.E.2d 499 (8th Dist.), *conflict certified*, 136 Ohio St.3d 1508, 2013-Ohio-4657, 995 N.E.2d 1212, this court held that separate victims alone established a separate animus for each offense.[2]

**{¶42}** In *Rogers*, the defendant was charged with two counts of receiving stolen property. The indictment revealed that the property was taken from two separate victims from two different houses taken during burglaries that occurred on the same day. The defendant argued on appeal that these acts were identical and, therefore, they should have merged for sentencing. In affirming the trial court's imposition of separate sentences, we concluded that, even where one victim's goods cannot be distinguished from another's, the defendant's conduct impacted multiple victims and "[e]ach victim has a specific and

---

[2]We note that the Ohio Supreme Court has certified a conflict in *Rogers* concerning whether an offender who receives, retains, or disposes of the property of two or more other persons in a single transaction may be convicted and sentenced for more than one count of receiving stolen property. Until this conflict has been resolved, we recognize the *Rogers* decision as precedent in this district.

identifiable right to redress against the conduct of the defendant." *Id.* at ¶ 22. We therefore determined that several sentences for a single act committed against multiple victims "'is permissible where the offense is defined in terms of conduct toward "another as such offenses are of dissimilar import; the import being each person affected."'" *Id.*, quoting *State v. Tapscott*, 7th Dist. Mahoning No. 11 MA 26, 2012-Ohio-4213, 978 N.E.2d 210, quoting *State v. Jones*, 18 Ohio St.3d 116, 118, 480 N.E.2d 408 (1985). *See also State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26 (finding that the court could impose multiple punishments for aggravated arson as the defendant caused six offenses of dissimilar import because six different people were placed at risk when the defendant set one structure on fire).

<u>Counts 3-24</u>

**{¶43}** In this case, Counts 3 through 21 identify the property loss of 13 technicians employed at Valley Freightliner as well as 6 separate entities that stored their vehicles on Valley Freightliner's property. Applying *Rogers*, we find the trial court did not err in failing to merge these counts. Crawley's conduct in setting the fire is a single act that could lead to the commission of separately defined offenses as outlined in the separate counts, thus satisfying the first prong of the *Johnson* test. *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 49. However, the separate victims in this case —13 technicians and 6 business entities — establish a separate animus for each offense. *Rogers* at ¶ 22. For this reason, Crawley's conduct fails to satisfy the second prong of

*Johnson*.  We therefore affirm the trial court's imposition of separate sentences in Counts 3 through 21.

{¶44} Counts 22 through 24, however, identify property damage suffered by the same victim, Valley Freightliner:  Count 22 charges that Crawley knowingly created a substantial risk of physical harm to Valley Freightliner's 2006 Freightliner CL120; Count 23 charges that Crawley knowingly created a substantial risk of physical harm to Valley Freightliner's 2000 Freightliner CL120; and Count 24 charges that Crawley knowingly created a substantial risk of physical harm to Valley Freightliner's 1998 Freightliner FLD120.  Because these counts allege that Crawley's conduct was committed against the same victim, the animus of each offense is the same.  Counts 22 through 24 should have therefore merged for sentencing.  As such, the trial court's imposition of separate sentences in these counts is reversed.

{¶45} Accordingly, we overrule Crawley's third assignment of error as it relates to Counts 3-21, but we sustain the assignment of error as it relates to Counts 22-24.

## Counts 1 and 2

{¶46} In Count 1, Crawley was charged with knowingly creating a substantial risk of physical harm to Dan Rogers, in violation of R.C. 2909.02(A)(1).  Count 2 charges that Crawley knowingly caused physical harm to an occupied structure, in violation of R.C. 2909.02(A)(2).

{¶47} As we previously stated, when an offense is defined in terms of conduct toward another, there is dissimilar import for each person affected by the conduct.

*Rogers*, 2013-Ohio-3235, 994 N.E.2d 499, *conflict certified*, 136 Ohio St.3d 1508, 2013-Ohio-4657, 995 N.E.2d 1212, at ¶ 22; *see also State v. Piscura*, 8th Dist. Cuyahoga No. 98712, 2013-Ohio-1793, ¶ 17. In other words, where a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each victim such that the offenses are not allied. *Id.*

{¶48} Here, Counts 1 and 2 allege physical harm against Dan Rogers and Valley Freightliner, an occupied structure, respectively. As such, a separate animus exists for each separate victim. Moreover, the evidence demonstrates that Crawley set the fire in Bay 2 of the occupied structure. He then called for Dan Rogers, who was approximately 35 feet away in the service office of the building. Responding to his call, Rogers came within 10 feet of the fire. This act of drawing Rogers closer to harm's way is sufficient to show a separate animus for each offense. As such, Counts 1 and 2 are not allied offenses of similar import and the trial court did not err in failing to merge the two counts.

{¶49} Crawley's fourth assignment of error is overruled.

{¶50} This cause is affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MARY J. BOYLE, A.J., and
EILEEN T. GALLAGHER, J., CONCUR